## STATEWIDE GRIEVANCE COMMITTEE *v.*
## DANIEL V. PRESNICK
## (13790)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued June 5—decision released August 7, 1990

*Daniel V. Presnick,* pro se, the appellant (defendant).

*Seymour N. Weinstein,* for the appellee (plaintiff).

COVELLO, J. This is an appeal by the defendant, Daniel V. Presnick, an attorney at law, from a judgment of the Superior Court that suspended him from the practice of law for two years. The principal issues are: (1) whether grievance panels, reviewing committees and the statewide grievance committee function as an unconstitutionally created court in violation of article fifth, § 1 of the Connecticut constitution; (2) whether the defendant was denied due process in violation of the fourteenth amendment to the United States constitution and article first, § 10 of the Connecticut constitution; (3) whether clear and convincing

evidence is the appropriate standard of proof in attorney disciplinary proceedings; (4) whether the defendant could be suspended from the practice of law absent a finding that he possessed a corrupt motive or evil intent; (5) whether, on remand, the trial court abused its discretion or engaged in judicial vindictiveness when it suspended the defendant from the practice of law for two years, where the term of suspension imposed upon the defendant in the first presentment proceeding was ninety days; (6) whether the evidence supported a finding that the defendant misappropriated his client's funds; and (7) whether the trial court should have dismissed the presentment. We affirm the judgment of the trial court.

Examination of the record discloses that on August 11, 1987, the plaintiff filed a presentment of attorney misconduct against the defendant alleging that he had committed two acts of misconduct involving his character, integrity and professional standing and conduct. On September 8, 1987, the trial court, *Downey, J.,* conducted an evidentiary hearing concerning these allegations. The trial court concluded that the defendant had violated the Code of Professional Responsibility[1] (code) as to both allegations of misconduct and rendered judgment suspending the defendant from the practice of law for ninety days.

The defendant appealed to the Appellate Court. In *Statewide Grievance Committee* v. *Presnick,* 18 Conn. App. 475, 559 A.2d 227 (1989), the Appellate Court set aside the judgment of the trial court and ordered a new trial on the ground that the proper standard of proof to use in determining whether an attorney had violated

[1] The Code of Professional Responsibility applies to attorney conduct that occurred, as in this case, before October 1, 1986, at which time it was replaced by the Rules of Professional Conduct.

the code is the "clear and convincing" evidence standard, rather than the "fair preponderance" standard used by the trial court.

Upon remand, following a second hearing, the trial court, *Fracasse, J.,* concluded that, as to the first allegation of misconduct, the defendant had violated DR 1-102 (A) (1) and (4),[2] and DR 9-102 (A) and (B) of the code.[3] The trial court rendered judgment suspending the defendant from the practice of law for two years.

---

[2] The Code of Professional Responsibility provides in part: "DR 1-102 MISCONDUCT. (A) A lawyer shall not: (1) Violate a Disciplinary Rule. . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. . . ."

[3] The Code of Professional Responsibility provides in part "DR 9-102 PRESERVING IDENTITY OF FUNDS AND PROPERTY OF A CLIENT. (A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated at a financial institution authorized to do business in such state, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

"(B) A lawyer shall:

"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

"(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive . . . ."

The trial court specifically found that the defendant had wrongfully applied child support payments received in behalf of a client to that client's outstanding bill for legal services rendered.

As to the second allegation of misconduct, the trial court concluded that the defendant had violated DR 2-101 (A) through (D) of the code.[4] The trial court rendered judgment reprimanding the defendant and ordered the return of a $75 legal fee collected on the basis of misleading advertising. The defendant appealed both sanctions to the Appellate Court. We thereafter transferred the appeal to ourselves pursuant to Practice Book § 4023.

The majority of the issues raised by the defendant have been disposed of in *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 575 A.2d 210 (1990) (*Presnick I*). The issues remaining are whether: (1) the trial court abused its discretion when it suspended the defendant for two years when the term of suspension imposed upon the defendant in the first presentment proceeding was ninety days; (2) imposing the increased period of suspension after the rehearing of a matter that the defendant had successfully appealed con-

---

[4] The Code of Professional Responsibility provides in part: "PUBLICITY IN GENERAL. (A) A lawyer shall not, on behalf of himself, his partner, associate or any other lawyer affiliated with him or his firm, use, or participate in the use of, any form of public communication containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim, nor shall any such communication be in an extravagant format. . . .

"(B) . . . [A] lawyer may publish . . . .

"(15) Fee for an initial consultation. . . .

"(C) When a lawyer publishes a fee for a service and thereafter renders the service, it must be rendered for no more than the fee advertised.

"(D) Unless otherwise specified in the publication, if the lawyer publishes any fee information authorized under DR 2-101 (B), the lawyer shall be bound by any representation made therein for the following periods . . . .

"(2) If published in newspapers and periodicals that are published once a month or less frequently, for the period until the next publication. . . ."

The trial court specifically found that the defendant had engaged in misleading and deceptive advertising by representing that the initial client consultation was free when in fact it was only the telephone call to the defendant's office and the discussion therein involved that was free, and that the defendant billed the face to face consultation that followed at the rate of $25 for each 15 minutes.

stituted judicial vindictiveness in violation of the principles articulated in *North Carolina* v. *Pearce,* 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled in part on other grounds, *Alabama* v. *Smith,* 490 U.S. 794, 109 S. Ct. 2204, 104 L. Ed. 2d 865 (1989); (3) the evidence supported the trial court's finding; and (4) the trial court should have dismissed the presentment.

The defendant first claims that the trial court abused its discretion when it suspended him for two years. In the context of attorney disciplinary proceedings, we have observed that "[t]he trial court upon such a complaint is not engaged in the trial of an ordinary action but is investigating the conduct of an officer of the court to the end that the courts and the public may be protected from his misconduct or unfitness. 'Into its determination there naturally and necessarily enters a large measure of judicial discretion.' It 'is not an absolute, but a reasonable' discretion which the court exercises." *Grievance Committee* v. *Broder,* 112 Conn. 263, 266, 152 A. 292 (1930).

"The fact that the court exercises a large measure of discretion and is in a position to most intelligently exercise it, furnishes no obstacle to a review to ascertain not only whether a reasonable discretion was used, but also whether the proceedings were regular and fair. . . .

"It does not follow, however, that the review which the court will make is one which will be permitted to take as wide a range, or assume the same character, as where the judicial action sought to be reviewed concerns the rights of parties as between themselves. . . . [A]n attorney whose fitness is challenged before the authority to which he owes and is responsible for the privileges he enjoys, has a right to an opportunity to be heard, a fair and dispassionate investigation, and a reasonable exercise of the judicial discretion; but

his relation to the tribunal, and the character and purpose of the inquiry, are such, that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review." *In re Durant,* 80 Conn. 140, 149–50, 67 A. 497 (1907).

The trial court found that the defendant had received ten child support payments totaling $730 on behalf of his client. When queried by the client, he specifically told her that he had not received any support payments from her former husband. He never disclosed that he had received the payments and applied them toward his outstanding legal charges. On appeal, the defendant has not claimed that any of the trial court's predicate findings are unsupported by the evidence nor does our examination of the record disclose this to be the case. In light of such conduct, it does not "clearly appear that [the defendant's] rights have in some substantial way been denied him" and we find, therefore, no abuse of the trial court's discretion.

The defendant next argues that the trial court engaged in judicial vindictiveness when, upon remand and following a rehearing of the identical allegations, it imposed a two year suspension that far exceeded the ninety day suspension imposed in the first proceeding. The gravamen of such a claim is that the trial court had retaliatory motives when it imposed the two year suspension and was, in effect, punishing the defendant for having successfully challenged his first suspension on appeal. We do not agree.

In *North Carolina* v. *Pearce,* supra, 725–26, the United States Supreme Court concluded that "[d]ue process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such

vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."

Although the United States Supreme Court has subsequently reexamined and qualified the *Pearce* doctrine,[5] it is sufficient for present purposes to observe that the trial court, in imposing the harsher sanction, did exactly what *Pearce* required. The trial court stated: "Effective July 28, 1989 [18 months after the first sanction was imposed], respondent was suspended from the practice of law for a period of one year. . . . In said proceeding, the court found respondent in violation of

---

[5] "See, e.g., *Texas* v. *McCullough,* 475 U.S. 134, 106 S. Ct. 976, 89 L. Ed. 2d 104 (1986) (defendant originally sentenced by jury; judge concluded defendant entitled to new trial; upon retrial defendant chose sentencing by judge; *Pearce* presumption inapplicable and even if it were to apply, court's findings overcame presumption); *Wasman* v. *United States,* 468 U.S. 559, 569, 104 S. Ct. 3217, 82 L. Ed. 2d 424 (1984) (presumption of vindictiveness applies since petitioner received greater sentence following retrial than that he had originally received; consideration by court of conviction between original sentencing and sentencing after retrial rebuts presumption); *United States* v. *Goodwin,* 457 U.S. 368, 372–84, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) (pretrial decision by prosecutor to modify charges does not warrant presumption of prosecutorial vindictiveness in pretrial setting); *Bordenkircher* v. *Hayes,* 434 U.S. 357, 362–64, 98 S. Ct. 663, 54 L. Ed. 2d 604, reh. denied, 435 U.S. 918, 98 S. Ct. 1477, 55 L. Ed. 2d 511 (1978) (prosecutor's action in carrying through on statement made during plea negotiations to bring additional charges against defendant if he refused to plead guilty to offense originally charged did not violate due process

Canon 5 and DR 5-104 (A) and DR 1-102 (A) (4). Respondent has now been found to have, for the second time, violated DR 1-102 (A) (4) by engaging in conduct which is deceitful. Accordingly . . . respondent is suspended from the practice of law for the period of two years." Thus it is clear that the harsher sanction was not motivated by vindictiveness but rather by the fact that the respondent had, in the interim, been found for a second time to have "engag[ed] in conduct [that was] deceitful." We conclude that the claim of judicial vindictiveness is totally without merit.

We have examined the defendant's remaining claims and conclude that the factual findings placed in issue are supported by clear and convincing evidence and that the trial court correctly applied the applicable law to the facts so found.[6]

The judgment is affirmed.

In this opinion the other justices concurred.

---

clause); *Blackledge* v. *Perry,* 417 U.S. 21, 25–29, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974) (prosecutor may not bring more serious charge against defendant prior to trial de novo in response to defendant's exercise of statutory right to appeal); *Chaffin* v. *Stynchcombe,* 412 U.S. 17, 24–28, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973) (where resentencing occurs before a jury, potential for abuse in sentencing is minimal; *Pearce* does not apply); *Colten* v. *Kentucky,* 407 U.S. 104, 112–20, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972) (prophylactic rule announced in *Pearce* not appropriate in context of two-tier system which allowed for trial de novo in court of general criminal jurisdiction following trial or guilty plea in an inferior court; likelihood of vindictiveness not present)." *State* v. *Taylor,* 207 Conn. 109, 114–15, 540 A.2d 64 (1988).

  [6] We are unable to find any authority, and the defendant does not suggest any to us, in support of the proposition that the trial court cannot issue an order suspending an attorney from the practice of law in the absence of a finding that the attorney possessed a corrupt motive or an evil intent. We conclude, therefore, that the suspension of an attorney requires no such finding.