## STATEWIDE GRIEVANCE COMMITTEE *v.*
## NITOR EGBARIN
## (AC 19801)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued October 30, 2000—officially released January 23, 2001

446

*Kweku J. Hanson*, for the appellant (defendant).

*Christopher L. Slack*, assistant bar counsel, for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendant, Nitor Egbarin, an attorney licensed to practice law in the state of Connecticut, appeals from the judgment rendered on a presentment in which the trial court concluded that the defendant was guilty of professional misconduct in violation of rule 8.4 (3)[1] of the Rules of Professional Conduct[2] and suspended him from the practice of law for five years.[3] On appeal, the defendant claims that the court (1) improperly found that he violated the Rules of Professional Conduct because rule 8.4 (3) is unconstitutionally vague and overbroad, (2) improperly found that he engaged in actions prohibited by rule 8.4 (3), (3) violated his due process rights by considering allegations of misconduct not raised in the presentment, (4) abused its discretion in suspending his license to prac-

---

[1] Rule 8.4 (3), formerly Rule 8.4 (c), of the Rules of Professional Conduct provides that it is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

[2] The judges of the Superior Court on October 1, 1986, adopted the Rules of Professional Conduct, which replaced the Code of Professional Responsibility as the guiding authority in Connecticut for attorney conduct.

[3] The Rules of Professional Conduct have been adopted by the judges of the Superior Court and "govern the professional rights and obligations of attorneys practicing law in Connecticut." *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 301 n.4, 627 A.2d 901 (1993).

tice law because the court's findings are unsupported by the record and (5) abused its discretion in suspending his license to practice law for a period of five years. The defendant also claims that the composition of the reviewing subcommittee violated his due process rights. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. The defendant has been a member of the bar and has practiced law in Connecticut since 1987. For approximately one year, in 1993, the defendant and his wife leased a house owned by Claude Picard and Pauline Picard (Picards) in Bloomfield, with an option to buy. The defendant decided to exercise his option to purchase the Picards' house, and the purchase price was initially set at either $300,000 or $330,000.[4] The property was subsequently appraised for $300,000. To purchase the Picards' property, the defendant obtained a mortgage loan from Sanborn Corporation (Sanborn) in the amount of $270,000. The Picards then lent $30,000 to the defendant for which the defendant also signed a promissory note. The defendant secured both loans with a mortgage on the property.

As a condition to receiving the loans, the defendant provided Sanborn and the Picards with copies of his 1992 and 1993 federal income tax returns. The defendant's 1992 federal income tax return listed an adjusted gross income of $93,603 and a tax liability of $26,210. His 1993 federal income tax return stated that the adjusted gross income was $116,950, with a tax owing of $31,389. The defendant also prepared a Uniform Residential Loan Application (URLA) for Sanborn and answered, "No, see file," to the question on the application regarding whether he was delinquent on any federal debt or

---

[4] The defendant and the Picards vigorously disagreed over the purchase price of the property. The defendant claimed that the price was fixed at $330,000, while the Picards claimed that the price was $300,000. The trial court did not resolve the amount of the actual purchase price of the property.

financial obligation. As to the defendant's answer of "No, see file," the trial court found that the defendant was referring to certain outstanding student loans.

The closing on the property was held on May 31, 1994. Scott Lewis, an attorney, represented the Picards at the closing. The defendant signed and submitted a final version of the URLA at the closing. When asked on the application whether he was delinquent on any federal debt or financial obligation, the defendant answered, "No." As of the date of the closing, however, the defendant had in fact not paid, nor even filed for, the amounts due and owing on the 1992 and 1993 federal income tax returns. The defendant did not disclose either to Sanborn or to the Picards that he had not paid his 1992 and 1993 federal income tax obligations.

Shortly after the closing, the defendant defaulted on the loan payments to both Sanborn and the Picards. Represented by Lewis, the Picards sued the defendant for the amounts owing on the promissory note. On November 4, 1998, the court found in favor of the Picards regarding the promissory note and awarded damages in favor of the Picards in the amount of $38,544.

In 1996, Lewis filed with the plaintiff statewide grievance committee a grievance complaint against the defendant, alleging that the defendant violated rules 3.3 (a) and (b); 4.1 (a) and (b); and 8.4 (a), (b) and (c) of the Rules of Professional Conduct.[5] On April 30, 1997, a grievance panel found probable cause that the defen-

[5] Practice Book § 2-32 (a) provides in relevant part: "Any person, or a grievance panel on its own motion, may file a written complaint, executed under penalties of false statement, alleging attorney misconduct whether or not such alleged misconduct occurred in the actual presence of the court. Complaints against attorneys shall be filed with the statewide bar counsel. . . ."

dant violated rules 4.1 (a) and 8.4 (3).[6] A reviewing subcommittee of the statewide grievance committee found that the defendant violated rule 8.4 (3) and recommended a Superior Court presentment.[7]

On December 10, 1998, the plaintiff filed a presentment in the Superior Court.[8] In the presentment, the plaintiff claimed that the defendant violated rule 8.4 (3) "by providing the tax returns but not disclosing to the lender and sellers that the tax liability represented in the returns had not been paid" and "by falsely representing on the [URLA] that he was not delinquent on any federal debt or other financial obligation." A hearing ensued.

During the presentment hearing, which commenced in March, 1999, Claude Picard testified that in lending the defendant $30,000, he relied, in part, on the federal income tax returns that the defendant provided. At the

[6] Practice Book § 2-32 (b) provides in relevant part: "The statewide bar counsel, chair or attorney designee and nonattorney member shall have fourteen days from the date the complaint was filed to determine whether to dismiss the complaint. If after review by the statewide bar counsel . . . it is determined that the complaint should be forwarded to a grievance panel for investigation . . . the complaint shall be so forwarded . . . ."

[7] Under Practice Book § 2-32 (f), "[t]he grievance panel . . . shall investigate each complaint to determine whether probable cause exists that the attorney is guilty of misconduct." Practice Book § 2-32 (i) provides in relevant part: "The panel shall, within one hundred and ten days from the date the complaint was referred to it, file . . . with the statewide grievance committee: its written determination concerning whether probable cause exists that the respondent is guilty of misconduct . . . ." "If the grievance panel determines that probable cause exists that the respondent is guilty of misconduct, the statewide grievance committee or the reviewing committee shall hold a hearing on the complaint. . . ." Practice Book § 2-35 (c).

[8] "Within ninety days of the date the grievance panel filed its determination of probable cause or no probable cause with the statewide grievance committee, the reviewing committee shall render a final written decision dismissing the complaint, imposing sanctions and conditions as authorized by Section 2-37 or directing the statewide bar counsel to file a presentment against the respondent in the superior court and file it with the statewide grievance committee. . . ." Practice Book § 2-35 (e).

hearing, the defendant also testified and stated before the trial court that at the time of the property closing in 1994, his taxes were not paid in full because of a personal arrangement with the Internal Revenue Service (IRS). When the court asked the defendant about the details of his arrangement with the IRS, the defendant avoided answering the question and failed to provide the court with any information or details. The defendant further revealed to the court that he also failed to pay his 1994 taxes.

On June 22, 1999, in a memorandum of decision, the court held that the plaintiff demonstrated by clear and convincing evidence that the defendant was guilty of professional misconduct and suspended the defendant from practicing law for five years. Specifically, the court concluded that the defendant violated rule 8.4 (3) in that he "fraudulently misrepresented relevant facts to his mortgage lender and to the seller of his former home. He has failed to pay his taxes and he has been less than honest and forthright with this court." After the expiration of the five years, the court stated that the defendant may be readmitted to the bar pending the successful completion of a bar approved course on legal ethics. This appeal followed.

Before addressing the defendant's specific claims, our analysis begins with a review of the legal principles that govern attorney disciplinary proceedings. "An attorney is admitted to the practice of law on the implied condition that the continuation of this right depends on remaining a fit and safe person to exercise it." *Statewide Grievance Committee* v. *Fountain*, 56 Conn. App. 375, 377, 743 A.2d 647 (2000). The Rules of Professional Conduct bind attorneys to uphold the law and to act in accordance with high standards in both their personal and professional lives. See Preamble to Rules of Professional Conduct. As officers and commissioners of the court, attorneys are in a special relationship with the

judiciary and are "subject to the court's discipline." *Statewide Grievance Committee* v. *Fountain,* supra, 377.

It is well established that "[j]udges of the Superior Court possess the inherent authority to regulate attorney conduct and to discipline the members of the bar. . . . It is their unique position as officers and commissioners of the court . . . which casts attorneys in a special relationship with the judiciary and subjects them to its discipline. . . . [T]he judges have empowered the statewide grievance committee to file presentments in Superior Court seeking judicial sanctions against those claimed to be guilty of misconduct. . . . In carrying out these responsibilities . . . the [statewide grievance committee] is an arm of the court . . . ." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Whitney,* 227 Conn. 829, 838, 633 A.2d 296 (1993), quoting *Sobocinski* v. *Statewide Grievance Committee,* 215 Conn. 517, 525–26, 576 A.2d 532 (1990). "A court disciplining an attorney does so not to punish the attorney, but rather to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession." *Statewide Grievance Committee* v. *Fountain,* supra, 56 Conn. App. 378.

## I

The defendant first claims that rule 8.4 (3) is unconstitutionally vague and overbroad in violation of the United States constitution. We decline to address this issue because it was not properly preserved for appellate review.

The record reveals that the defendant did not raise the issue of the constitutionality of rule 8.4 (3) before the trial court. Practice Book § 60-5 provides in relevant part that this "court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose

subsequent to the trial. . . ." This rule against considering claims not advanced at trial also pertains to constitutional issues. *Statewide Grievance Committee* v. *Whitney*, supra, 227 Conn. 846. "Only in the most exceptional circumstances will this court consider a claim that was not raised [before the trial court]. . . . Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . An exception may also be made where consideration of the question is in the interest of public welfare or of justice between the parties." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Friedland*, 222 Conn. 131, 147, 609 A.2d 645 (1992), quoting *Dubois* v. *General Dynamics Corp.*, 222 Conn. 62, 68–69, 607 A.2d 431 (1992).

The defendant has not pointed to or established any exceptional circumstances warranting our review of this unpreserved claim. In his brief, the defendant seeks our review of this claim on the grounds that this issue is capable of repetition and will adversely affect future attorneys subject to discipline under rule 8.4 (3). The defendant's argument, however, fails to address whether exceptional circumstances exist warranting review of this *unpreserved* claim. The defendant failed to assert any additional arguments or facts demonstrating exceptional circumstances that would justify review of this unpreserved claim. Accordingly, we decline to review the merits of this claim. See *Berry* v. *Loiseau*, 223 Conn. 786, 828–29, 614 A.2d 414 (1992).

## II

The defendant next claims that the court improperly found that he violated rule 8.4 (3) because rule 8.4 (3) does not proscribe the defendant's actions in the

present situation. Specifically, the defendant argues that rule 8.4 (3) prohibits only active, intentional misrepresentation and, because he did not explicitly say that he paid his income taxes, he engaged in, at most, passive misrepresentation.[9] Further, the defendant contends that he could not have misrepresented any facts to Sanborn or to the Picards because he did not have a duty to disclose to them that his taxes were unpaid. We disagree.

In presentment proceedings, the statewide grievance committee must prove by clear and convincing evidence that the attorney engaged in misconduct in violation of the Rules of Professional Conduct. See *Statewide Grievance Committee* v. *Whitney*, supra, 227 Conn. 838. The trial court conducts the presentment proceeding de novo. See *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 167, 575 A.2d 210 (1990). In determining whether an attorney violated the Rules of Professional Conduct and the appropriate sanction to impose, the trial court possesses a great deal of discretion. See *Statewide Grievance Committee* v. *Presnick*, 216 Conn. 127, 131, 577 A.2d 1054 (1990); *Grievance Committee* v. *Nevas*, 139 Conn. 660, 666, 96 A.2d 802 (1953). When the trial court determines that an attorney committed misconduct in violation of the Rules of Professional Conduct, "unless it clearly appears that [the attorney's] rights have in some substantial way been denied him, the action of the court will not be set aside upon review." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Presnick*, supra, 216 Conn. 132, quoting *In re Durant*, 80 Conn. 140, 150, 67 A. 497 (1907).

In essence, the court found that the defendant's actions amounted to both fraudulent misrepresentation

---

[9] The defendant argues that his actions amounted to, at most, passive misrepresentation. Under the circumstances present here, however, we view passive misrepresentation as a euphemism for fraudulent nondisclosure.

and fraudulent nondisclosure in violation of rule 8.4 (3). The court found that there was clear and convincing evidence demonstrating that the defendant misrepresented relevant facts to Sanborn and to the Picards by submitting his federal income tax returns without disclosing that he did not pay his income taxes, stated a falsehood on the URLA when he denied having any outstanding federal obligations and was "less than forthright [to the court] in his testimony concerning his taxes." Further, the court concluded that the defendant failed to disclose information "under circumstances where there is a duty to speak," all in violation of rule 8.4 (3).

The elements comprising an action in fraud or fraudulent misrepresentation are that: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." (Internal quotation marks omitted.) *Parker* v. *Shaker Real Estate, Inc.*, 47 Conn. App. 489, 493, 705 A.2d 210 (1998). Fraud by nondisclosure "expands on the first three of [the] four elements [and] involves the failure to make a full and fair disclosure of *known* facts connected with a matter about which a party has assumed to speak . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 494, quoting *Gelinas* v. *Gelinas*, 10 Conn. App. 167, 173, 522 A.2d 295, cert. denied, 204 Conn. 802, 525 A.2d 965 (1987). "To constitute [fraud by nondisclosure], there must be a failure to disclose known facts and, in addition thereto, a request or an occasion or a circumstance which imposes a duty to speak." *Egan* v. *Hudson Nut Products, Inc.*, 142 Conn. 344, 347, 114 A.2d 213 (1955). The duty to disclose known facts is imposed on a party "insofar as he voluntarily makes disclosure. A party who assumes to speak must make a full and fair disclosure

as to the matters about which he assumes to speak."
(Internal quotation marks omitted.) *Duksa* v. *Middletown*, 173 Conn. 124, 127, 376 A.2d 1099 (1977).

We are not persuaded by the defendant's arguments that his actions did not amount to fraud and further that he did not have a duty to disclose to Sanborn and to the Picards that his taxes were unpaid. The court properly analyzed the defendant's actions under the four elements of fraudulent misrepresentation and the legal concepts of fraudulent nondisclosure. Given the great amount of discretion that we accord to the trial court in attorney grievance proceedings, we do not conclude that the court abused its discretion in finding that, under the circumstances, the defendant fraudulently misrepresented facts on his URLA application, committed fraudulent nondisclosure in failing to inform Sanborn and the Picards that he did not pay his taxes, and fraudulently misrepresented facts regarding his taxes before the court.

Likewise, the defendant's claim that rule 8.4 (3) does not prohibit "passive misrepresentation" is without merit. "[U]nder certain circumstances, there may be as much fraud in a person's silence as in a false statement." *Egan* v. *Hudson Nut Products, Inc.*, supra, 142 Conn. 347. Therefore, we find no merit to the defendant's second claim.

### III

The defendant next claims that the court deprived him of his due process rights by improperly considering allegations beyond those contained in the presentment. Specifically, the defendant contends that his due process rights were violated because the presentment did not adequately provide notice that his failure to pay taxes was at issue. We disagree.

Although in reviewing an attorney grievance proceeding we afford great discretion to the trial court to deter-

mine the manner in which to conduct and resolve a matter, "[t]his discretion, however, must not be exercised at the expense of an attorney's right to procedural due process." *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 308, 627 A.2d 901 (1993). "Because a license to practice law is a vested property interest, an attorney subject to discipline is entitled to due process of law." *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 675, 646 A.2d 781 (1994). In attorney grievance proceedings, due process mandates that "[b]efore discipline may be imposed, an attorney is entitled to notice of the charges, a fair hearing and an appeal to court for a determination of whether he or she has been deprived of these rights in some substantial manner." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Botwick*, supra, 308. Regarding the notice required to satisfy due process, the presentment must "be sufficiently intelligible and informing to advise the court of the matter complained of, and the attorney of the accusation or accusations made against him, to the end that . . . the latter may prepare to meet the charges against him . . . ." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*, supra, 675, quoting *In re Peck*, 88 Conn. 447, 453, 91 A. 274 (1914).

The defendant claims that the presentment failed to apprise him that his failure to pay taxes was at issue. Contrary to the defendant's assertions, the presentment specifically states in paragraphs six through ten[10] that

---

[10] The presentment provides in relevant part:

"6. At the time the mortgage loans were obtained, the [defendant] had not paid the amounts shown as due and owing on the tax returns.

"7. The [defendant] did not disclose to either of the lenders, including the sellers, that said taxes had not been paid at the time the tax returns were provided or at any time prior to obtaining the mortgage loans.

"8. The [defendant] further provided a Uniform Residential Loan Application in which the [defendant] represented that he was not delinquent or in default on any federal debt or any other financial obligation, despite the unpaid federal tax liability.

"9. The [defendant] violated Rule 8.4 (3) (formerly Rule 8.4 (c)) of the

the defendant's failure to pay his federal income taxes is the basis for the plaintiff's allegations that the defendant engaged in misconduct. Further, this grievance proceeding arose out of the defendant's failure to pay his federal income taxes and subsequent nondisclosure. If the defendant had satisfied his federal tax obligations at the time he entered into transactions with Sanborn and the Picards, then this proceeding would not be before us today.

In arguing that he lacked notice that his failure to pay his taxes was at issue, the defendant cites *Statewide Grievance Committee* v. *Botwick*, supra, 226 Conn. 299, to support his position. *Botwick*, however, does not pertain to the present case. In *Botwick*, our Supreme Court held that the trial court infringed the defendant's due process right to notice in an attorney grievance proceeding when the court found that the defendant violated the Rules of Professional Conduct based on a transaction wholly unrelated to the allegations contained in the presentment. Id., 311. Here, not only is the defendant's failure to pay his taxes related to all of the allegations in the presentment, but it is the cornerstone and basis of the entire grievance proceeding. There is no question that the defendant knew that his failure to pay his income taxes was at issue, that this issue repeatedly arose throughout the hearing and that the defendant was given a full opportunity to respond. See *Statewide Grievance Committee* v. *Rozbicki*, 219 Conn. 473, 484, 595 A.2d 819 (1991), cert. denied, 502 U.S. 1094, 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992). Accordingly, we conclude that because the defendant

Rules of Professional Conduct by providing the tax returns but not disclosing to the lender and sellers that the tax liability represented in the returns had not been paid.

"10. The [defendant] violated Rule 8.4 (3) . . . by falsely representing on the Uniform Residential Loan Application that he was not delinquent on any federal debt or other financial obligation."

received adequate notice, his due process claim must fail.

## IV

The defendant next contends that the court abused its discretion because its findings are unsupported by the record. In particular, the defendant claims that there is a lack of evidence demonstrating that he submitted his 1993 tax returns to the Picards and that he committed any misrepresentation. Further, the defendant argues that the court unreasonably relied on Lewis' testimony. We disagree.

We will reiterate and expand on our prior discussion of the standard of review of a trial court's judgment in the context of attorney grievance proceedings. The trial court conducts the presentment hearing de novo. *Statewide Grievance Committee* v. *Presnick*, supra, 215 Conn. 167. In determining whether the evidence on the record supports the trial court's conclusion, our scope of review is of a limited nature. *In re Application of Pagano*, 207 Conn. 336, 344, 541 A.2d 104 (1988). "All of our cases agree that the trial court has a wide discretion in the premises." *Grievance Committee* v. *Nevas*, supra, 139 Conn. 666. "[A] reviewing court must defer to the discretion of the fact finder, whether it be the trial court or the committee, because the fact finder is in the best position to evaluate the evidence and the demeanor of the parties." *Statewide Grievance Committee* v. *Glass*, 46 Conn. App. 472, 479, 699 A.2d 1058 (1997), citing Practice Book § 27N (f), now § 2-38 (f).[11] "[E]very reasonable presumption should be given in favor of the correctness of the court's ruling." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Glass*, supra, 479. "Judicial discretion is always

[11] Practice Book § 2-38 (f) provides in relevant part: "Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. . . ."

a legal discretion. Its abuse will not be interfered with on appeal to this court except in a case of manifest abuse and where injustice appears to have been done." (Internal quotation marks omitted.) *Grievance Committee* v. *Nevas*, supra, 666, quoting *Hayward* v. *Plant*, 98 Conn. 374, 382, 119 A. 341 (1923).

After reviewing the record, we conclude that ample evidence exists supporting the trial court's conclusions. At the hearing, Claude Picard testified that the defendant submitted the 1993 tax return to him and that he relied on the tax return in deciding to grant the $30,000 loan to the defendant. Further, it was the prerogative of the court to determine what weight, if any, to give to the testimony of Picard and Lewis. See *In re Deana E.*, 61 Conn. App. 197, 208, 763 A.2d 45 (2000). Under the circumstances, we cannot say that a manifest abuse of discretion has occurred. Therefore, we decline to disturb the court's factual findings and conclusion.

V

The defendant further claims that the court abused its discretion in suspending him from the practice of law for five years. We disagree.

The trial court possesses "inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 678, quoting *In re Weissman*, 203 Conn. 380, 384, 524 A.2d 1141 (1987). It is well established that in sanctioning an attorney for violations of the Rules of Professional Conduct, "courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*,

supra, 679. "Whether this court would have imposed a different sanction is not relevant. Rather, we must determine whether the trial court abused its discretion in determining the nature of the sanction. . . . We may reverse the court's decision [in sanctioning an attorney] only if that decision was unreasonable, unconscionable or arbitrary, and was made without proper consideration of the facts and law pertaining to the matter submitted." (Citation omitted.) *Statewide Grievance Committee* v. *Fountain*, supra, 56 Conn. App. 381.

In determining the appropriate sanction for the defendant's violations of rule 8.4 (3), the court utilized various sections of the American Bar Association's Standards for Imposing Lawyer Sanctions (Standards).[12] Specifically, the court relied on Standards 3.0[13] and 9.1[14] in deciding to suspend the defendant from the practice of law for five years.

The court's memorandum of decision demonstrates that the court thoroughly considered various aggravating and mitigating factors in arriving at its final determination. Pursuant to Standard 9.22, the court considered several aggravating factors.[15] The court noted that there

[12] Although the Standards have not been formally adopted by the judges of this state, trial courts may rely on the Standards for guidance when a particular rule of professional conduct, in this case rule 8.4, does not provide guidelines for ascertaining the proper sanction for attorney violations. *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 673 n.10; *Statewide Grievance Committee* v. *Glass*, supra, 46 Conn. App. 481.

[13] Standard 3.0 of the American Bar Association's Standards for Imposing Lawyer Sanctions provides: "In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors."

[14] Standard 9.1 of the American Bar Association's Standards for Imposing Lawyer Sanctions provides: "After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose."

[15] Standard 9.21 of the American Bar Association's Standards for Imposing Lawyer Sanctions provides that the presence of aggravating factors may justify an increase in the severity of the discipline imposed. Under Standard

are pending grievances against the defendant and that the defendant committed multiple offenses. Further, the court found that the defendant's misrepresentation evinced a selfish motive and that the defendant refused to acknowledge the wrongful nature of his conduct. The court concluded that the defendant made false statements before the court and engaged in illegal conduct in failing to pay his taxes and to disclose to Sanborn and to the Picards that his taxes were unpaid. Lastly, the court took into account the victims in the case and the defendant's failure to pay restitution.

Regarding mitigating factors, the court acknowledged that the defendant lacked a prior disciplinary record. Additionally, the court contemplated that the defendant never had been charged with the failure to pay his taxes. The court recognized the defendant's arguments that his misrepresentation, if any, was passive and that restitution was unnecessary here. Further, the court took into account that the defendant suffered injury to his reputation and financial losses, including the forfeiture of his prestigious home and luxury cars, that his children no longer attend private school and that the defendant suffered embarrassment resulting from the proceedings.[16] After balancing the aggravating and mitigating factors in light of the defendant's violations of rule 8.4 (3), the court imposed a five year suspension from the practice of law.

9.22, aggravating factors include but are not limited to: "(b) dishonest or selfish motive . . . (d) multiple offenses . . . (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim . . . (j) indifference to making restitution; (k) illegal conduct . . . ."

[16] Standard 9.31 of the American Bar Association's Standards for Imposing Lawyer Sanctions instructs that the existence of mitigating factors may justify a reduction in the degree of discipline to be imposed. Pursuant to Standard 9.32, mitigating factors include the absence of a prior disciplinary record, personal or emotional problems, a good faith effort to make restitution or to rectify the consequences of misconduct, character or reputation, and the imposition of other penalties or sanctions.

Although, the defendant cites numerous cases in which the attorneys subject to discipline received less severe sanctions, we are unpersuaded that the court abused its discretion in the present case in suspending the defendant's license to practice law for five years. Given the record before the court and the court's consideration of both aggravating and mitigating factors, we cannot conclude that the court acted unreasonably, unconscionably or arbitrarily. See *Statewide Grievance Committee* v. *Glass*, supra, 46 Conn. App. 480. "[O]f paramount importance in attorney disciplinary matters is 'the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing.'" *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 681, quoting *Grievance Committee* v. *Broder*, 112 Conn. 263, 265, 152 A. 292 (1930). We conclude that the court properly exercised its discretion in suspending the defendant from the practice of law for five years.

## VI

The defendant finally claims that the composition of the reviewing subcommittee of the grievance committee violated his due process rights because it was comprised of only one attorney and one lay person, as opposed to two attorneys and one nonattorney.[17] We disagree.

At the hearing before the reviewing committee, the defendant failed to object to the composition of the committee. "We have held that the failure to raise a procedural claim or the failure to utilize a remedy available to cure a procedural defect can constitute a waiver of the right to object to the alleged defect." *Jutkowitz*

---

[17] Practice Book § 2-35 (a) provides in relevant part: "Upon receipt of the record from a grievance panel, the statewide grievance committee may assign the case to a reviewing committee which shall consist of at least three members of the statewide grievance committee, at least one third of whom are not attorneys. . . ."

v. *Dept. of Health Services*, 220 Conn. 86, 95, 596 A.2d 374 (1991). We conclude that the defendant's failure to object to the composition of the reviewing committee during the hearing constitutes a waiver of this claim. See *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 632, 613 A.2d 739 (1992).

The judgment is affirmed.

In this opinion the other judges concurred.