[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Respondent, Douglas R. Daniels, has been licensed as an attorney in Connecticut since 1967. He is also a member of the Mississippi bar, although he has not been active there for many years. A graduate of Yale College and Yale Law School, the Respondent served in the United States Air Force for four years before starting to practice law in this state. He devotes the majority of his law practice to criminal defense and family law. The Respondent is 65 years old, married and the father of two adult children. He also supports and cares for his 97 year old father-in-law, who lives with him and his wife.
The amended petition includes numerous allegations of misconduct arising out of the Respondent's representation of nine of his former clients. The parties have stipulated to the factual basis for these allegations and no additional evidence was offered as to the conduct itself. The Respondent did not stipulate that his conduct violated the various Rules of Professional Conduct as claimed by the Petitioner, but he has not made any serious attempt to deny that the stipulated facts support a finding that the Rules violations alleged by the Petitioner have been established. Instead, the Respondent offered testimony and CT Page 6559 documentary evidence relevant to the appropriate form and degree of discipline to be imposed by the court.
The Petitioner seeks to have the Respondent suspended from the practice of law for a period of three years. The Respondent urges the court to impose only a reprimand. Specifically, he contends that his neglect of his clients and his practice was due to a combination of the resignation of his long time administrative assistant and the stress occasioned by his learning that his wife had been diagnosed with breast cancer. Having at last hired a competent administrative assistant and a new associate, having reached a point in time where his wife has been cancer-free for nearly five years, and having begun therapy with a psychiatrist a few months before the hearing in this matter, he argues that suspension of his right to practice law does not serve any of the purposes of proceedings such as these.
A presentment proceeding "is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court."Statewide Grievance Committee v. Rozbicki, 219 Conn. 473, 483 (1991), cert. denied, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992)."In presentment proceedings, the Statewide Grievance Committee must prove by clear and convincing evidence that the attorney misconduct it alleges has occurred." Statewide Grievance Committee v. Whitney, 227 Conn. 829, 838
(1993). Based on the stipulated facts, the court concludes that the Petitioner has met its burden and makes the following findings:
The Respondent represented Angela Gattison regarding a contempt motion. The Respondent failed to advance Ms. Gattison's case and failed to communicate with her adequately during the course of his representation in violation of Rules 1.3[1] and 1.4(a).[2] The Respondent failed to promptly comply with requests for an accounting and a refund in violation of Rules 1.15(b)[3] and 1.16(d).[4]
The Respondent represented Ervin W. Witcher regarding a dissolution of marriage action. The Respondent failed to deliver to Mr. Witcher his divorce proceeds promptly in violation of Rules 1.3 and 1.15(b).
The Respondent represented Debra Bolka regarding an adoption matter. The Respondent failed to respond to letters and communications from Ms. Bolka adequately in violation of Rule 1.4(a). The Respondent failed to provide a timely refund and to provide an accounting of his fees in violation of Rule 1.15(b).
The Respondent represented Leonard Gerst regarding a custody matter. The Respondent filed no papers on Mr. Gerst's behalf and failed to return CT Page 6560 many of Mr. Gerst's telephone calls in violation of Rules 1.3 and 1.4 (a).
The Respondent represented Edward Bruce, Jr. regarding a domestic matter. The Respondent failed to return Mr. Bruce's telephone calls in violation of Rule 1.4(a). The Respondent failed to refund Mr. Bruce's retainer in a timely fashion in violation of Rule 1.15(b).
The Respondent represented Emily C. Ferrucci regarding a grandparents' visitation matter. The Respondent failed to file a timely motion for order of visitation and failed to communicate adequately with Ms. Ferrucci regarding the status of the case in violation of Rules 1.3 and 1.4. The Respondent also failed to provide her with an accounting of the services he performed and failed to timely return of any or all of the retainer in violation of Rules 1.15(b) and 1.16(d).
The Respondent represented Gary Beckford in connection with an appeal before the Board of Immigration Appeals. The Respondent failed to keep Mr. Beckford reasonably informed regarding the status of his case and failed to explain matters to the extent necessary to permit Beckford to make an informed decision regarding the representation in violation of Rule 1.4. The Respondent failed to provide a written fee agreement in violation of Rule 1.5(b).[5] The Respondent failed to complete either the appeal form (Form EOIR-26)or the appearance form before the Board of Immigration Appeals (Form EOIR-27) to indicate his representation of Mr. Beckford properly, in violation of Rule 1.1.[6] The Respondent's failure to file a motion to reopen and his communication with the immigration offices regarding Form EOIR-28 following the Board of Immigration Appeals decision demonstrated a lack of competence and diligence in violation of Rules 1.1 and 1.3.
The Respondent represented Christina A. Muratti in a personal injury claim. He failed to pay her outstanding medical bills in timely fashion after he had settled her personal injury matter, in violation of Rule 1.15(b).
Grievance Complaints against the Respondent were filed by Gattison, Bolka, Gerst, Bruce and Muratti. The Respondent failed to file an answer to those grievance complaints in violation of Practice Book § 2-32
(a)(1).[7] Another former client, Linwood Crockett, also filed a Grievance Complaint which has not become a part of this presentment but which the Respondent also failed to answer in violation of Practice Book § 2-32(a)(1).
It is well established that the Superior Court has exclusive jurisdiction over all attorneys admitted to practice in Connecticut. It CT Page 6561 has the inherent power to suspend, disbar or otherwise discipline an attorney. In re: Westcott, 66 Conn. 585, 1895); Massameno v. StatewideGrievance Committee, 234 Conn. 539, 553-554 (1995); State Bar Associationv. Connecticut Bank Trust Co., 145 Conn. 222 (1958). The purpose of this power has been held to be "not to mete out punishment to an offender, but that the administrators of justice may be safeguarded and the courts and the public protected from misconduct or unfitness of those who are licensed to practice." In re: Durant, 80 Conn. 140 (1907); Inre: Horwitz, 21 Conn. Sup. 363 (1989).
 "Attorney disciplinary proceedings are for the purpose of preserving the courts from the official ministration of persons unfit to practice in them. An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Internal quotation marks omitted.) (Internal citations omitted.)
Statewide Grievance Committee v. Shluger, 230 Conn. 668, 674-75 (1994).
The trial court has "inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound judicial discretion to determine what sanction to impose in light of the entire record before it." (Internal citations omitted) StatewideGrievance Committee v. Shluger, 230 Conn. 668, 678 (1994) citing In ReWeissman, 230 Conn. 380, 384 (1987)." "`[C]ourts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice'." (Internal citations omitted). Shluger at 679. Courts "have a continuing CT Page 6562 duty "to make it entirely clear that the standards of conduct, nonprofessional as well as professional, of the members of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of a reasonable discretion . . ."." (Internal citations omitted). Id. "In determining whether an attorney violated the Rules of Professional Conduct and the appropriate sanction to impose, the trial court possesses a great deal of discretion." Statewide Grievance Committee v. Egbarin, 61 Conn. App. 445,453 (2001).
While they have not been officially adopted as rules by the Judges of the Superior Court, the American Bar Association's Standards for Imposing Lawyer Sanctions have frequently been utilized in determining the appropriate discipline to be imposed in presentment matters. Our Supreme Court has noted their usefulness in Statewide Grievance Committee v.Spirer, 247 Conn. 762, 782, 725 A.2d 948 (1999); see also StatewideGrievance Committee v. Shluger, 230 Conn. 668, 673 n. 10, 646 A.2d 781
(1994). Section 3.0 of the Standards states that "[i]n imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors."
The duties in this case are set forth in the Rules which the court has now found that the Respondent violated. They relate to the some of most fundamental obligations that a client has the right to expect from his or her lawyer . . . diligence, prompt communication, a written fee agreement and proper accounting for funds and fees. The Respondent also violated an important duty to the court on several occasions by failing to respond to Grievance Complaints.
The Respondent's mental state at the time of the misconduct forms the principal basis of his contention that he should not be suspended from the practice of law. The evidence supports his claim that when his long-time administrative assistant resigned in 1997, he was unable to find a worthy successor. By all accounts, this administrative assistant was the glue that held the practice together. The Respondent concentrated his efforts on serving his clients; he relied on her to keep track of his appointments, his financial obligations, his court appearances and virtually everything else relating to the day to day operation of his office. He himself lacked those skills, and her leaving without a suitable replacement corresponded with the time that the Respondent began to fail his clients.
At around the same time, the Respondent's wife, to whom he is genuinely devoted, was diagnosed with breast cancer. Both the Respondent and his CT Page 6563 psychiatrist, C. Scott Grove, MD, testified convincingly that the respondent became preoccupied with the thought that he might lose his wife. He neglected his clients and the details of his practice, and with no competent office manager to oversee the running of his office, the Grievance Complaints began to mount. In addition to the complaints that are the subject of the instant petitions, there are also others that are either in progress or on appeal.[8]
Dr. Grove described a patient who was severely depressed and possibly suicidal when he began to treat him in August of 2001. He reports significant progress to date, but also foresees a fairly lengthy course of psychotherapy to come. The Petitioner is clearly in the hands of a capable and concerned physician who wants the best for his patient. This court could not overcome its own concern, however, that Dr. Grove's desire to be an advocate for his patient may be clouding his ability to judge the Respondent's ability to safely continue in the practice of law. The court was somewhat alarmed, for example, to learn that the Respondent had not even discussed the pendency of these proceedings with his wife. While sensitivity to his wife's probable reaction to such news is understandable, this fact served to raise questions about whether the Respondent was still in denial about the severity of his misconduct and the seriousness of his predicament. That the Respondent only began treatment in the second half of 2001, when his personal and professional problems had been burgeoning since 1998, also caused the court some concern about whether his principal motivation in seeking treatment was in fact a true effort to understand the psychological underpinnings of his dereliction of his duties to his clients, or whether it was in large part to impress the court that he was taking responsible steps toward getting his life under control.
The court agrees that the Respondent's mental status, and the fact pattern that occasioned it, should be taken into account in determining the appropriate sanction. The court will discuss this issue further, infra, in its analysis of the mitigating factors in this case.
No evidence was offered as the actual or potential harm suffered as a result of the Respondent's misconduct. There has been no claim of any actual pecuniary loss, although the potential was certainly present simply by the nature of much of the misconduct.
Although the American Bar Association's Standards for Imposing Lawyer Sanctions "have not been officially adopted in Connecticut, they are used frequently by the Superior Court in evaluating attorney misconduct and in determining discipline. . . ." Statewide Grievance Committee v.Fountain, 56 Conn. App. 375, 381 (2000). Standard 9.1 provides that "[a]fter misconduct has been established aggravating and mitigating CT Page 6564 circumstances may be considered in deciding what sanction to impose."
The § 9.22 aggravating factors include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (I) indifference to making restitution; (k) illegal conduct, including that involving the use of controlled substances.
As for prior disciplinary offenses, the Petitioner has made reference to several Grievance Complaints against the respondent that are either in the process of being reviewed or are on appeal. Because none of these complaints has resulted in a final determination, the court declines to consider them.
There has been no evidence presented from which the court could conclude a dishonest or selfish motive, bad faith, submission of false evidence, false statements, or other deceptive practices, indifference to making restitution, illegal conduct or the use of controlled substances. There has been no evidence suggesting that the victims were unusually vulnerable. The Respondent, by stipulating to the facts that form the basis of this presentment, and through his testimony, has acknowledged the wrongful nature of his conduct.
On the other hand, the petitioner has clearly established a pattern of misconduct including multiple offenses involving lack of diligence, failure of communication, failure to account properly for fees and other finances and failure to respond to Grievance Complaints. The respondent has had substantial experience in the practice of law, having been a member of the bar of this state for 35 years.
The § 9.32 mitigating factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical CT Page 6565 dependency or mental disability is demonstrated by a meaningful and sustained period of a successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely; (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses.
Of these, the mitigating factors that may apply to this case include the respondent's lack of a prior disciplinary record, absence of dishonest or selfish motives, remorse (all of which were already discussed in the analysis of aggravating factors, supra), personal or emotional problems, mental disability, and character and reputation.
As to character and reputation, Attorney Gerald Dwyer, a friend and colleague who is also counsel to the local grievance panel, spoke positively about he respondent. Supervising Assistant State's Attorney Francis J. McQuade and Attorney Dennis Driscoll, the Respondent's present associate, also gave positive references both as to character and professional competence. Judges Gerard Esposito, whose knowledge of the Respondent dates back to his days as an assistant state's attorney in Derby, and Richard Damiani, who has served as a presiding criminal judge in several jurisdictions, both spoke of the respondent as a conscientious and zealous advocate for his clients.
The major mitigating factor advanced by the respondent is his mental status at the time of his misconduct. In summary, his argument is that his misconduct occurred at a time when he was handicapped by the absence of a capable office manager and when his wife's illness, and his reaction to it, robbed him of the ability to attend to his practice and to his clients in the manner that to which he had been accustomed. His ethical violations occurred, he argues, because his mental disability rendered him incapable of attending to his practice, and without a capable office manager to "watch the store", he began to neglect his clients. Moreover, he contends, now that he has a competent office manager and associate, and now that he is seeing a psychiatrist and developing insights into his disability, neither his clients nor the courts have any reason to be concerned about his ability to practice law. Indeed, any sanction greater than a reprimand would not advance the purpose of protecting the court and instead would be merely the meting out of punishment which, our cases instruct us, is not the purpose of disciplinary proceedings.
That it is appropriate to consider the Respondent's mental state is not in serious dispute, although its precise impact on the sanction to be imposed is. The Respondent in Statewide Grievance Committee v. Fountain,56 Conn. App. 375, 375 (2000) had claimed that his "misconduct resulted from alcoholism and that because his drinking problem had been under control for more than four years at the time of his presentment to the CT Page 6566 court, the imposition of the suspension was purely punitive and therefore improper." The Court did not agree and affirmed the judgment of the trial court. In addressing the Respondent's treatment, the court stated:
 Although we encourage all who suffer from drug an alcohol dependency to deal with their problems, we want to make it clear that the more appropriate time to deal with such issues is prior to the occurrence of misconduct rather than afterward. An attorney who seeks treatment without having violated the rules will not be disciplined for so doing. An attorney who gains control over his or her substance abuse problems only after committing misconduct, however, may be disciplined, not because the attorney is in treatment but rather because the attorney's conduct necessitates that result to protect our courts and the public. We will not excuse conduct that brings disrepute to the legal profession merely because an attorney, subsequent to the conduct, gains control over his or her addiction. We endeavor, therefore, to advise each member of bar that substance abuse treatment should be used as a sword to cut off misconduct before it occurs rather than as a shield to insulate misdeeds. Fountain at 383.
Other states have also addressed this type of situation. In In re:Appler, 669 A.2d 731 (D.C. 1995) the court said that to mitigate his sanction, an attorney must show: (1) that he suffered from a disorder; (2) which "substantially affected" his conduct; and (3) that he has been rehabilitated" from that condition. In Porter v. The State Bar ofCalifornia, 276 Cal.Rptr. 384, 390 (1990) the respondent's testimony was to the effect that his depression and anxiety were at one time disabling but that he had recovered from his dysfunctional period. The court took this into account and suspended the respondent for five years, but stayed that sanction conditioned on five years probation and two years actual suspension.
Daniels argues that all his misconduct occurred during a period when he was extremely fragile emotionally and when he lacked, through no fault of his own, capable office staff. Because he is currently in treatment, which his therapist reports is proceeding well, and because he now has capable office staff, he argues that he is no threat to his clients or others. Because, therefore, the public and the courts no longer need protection from him, he contends that any period of suspension imposed by the court would of necessity be punitive in purpose and therefore impermissible. There are two answers to this contention. CT Page 6567
First, it is not as clear as respondent would have us think that he is currently fit to practice law. Although he is to be commended for undertaking therapy, he is still in its earlier stages, having begun his once per week sessions less than a year ago and having been diagnosed by his therapist as moderately to severely depressed. Indeed, Dr. Grove requested that the respondent not be in the courtroom during his testimony, in which he revealed his concern that his patient might be suicidal. The fact that the respondent had not, as of the time of the hearings in this matter, even told his wife about them, suggests that the respondent has not yet fully come to grips with the problems that led to the complaints against him and which now threaten his right to practice.
Second, the apparent prohibition against "punishment" in disciplining attorneys needs to be viewed with care. Punishment is generally considered to be an effort to serve five legitimate purposes: a) retribution, or the concept of "just desserts"; b) specific deterrence, the effort to assure that the individual offender does not recidivate; c) general deterrence, the effort to deter others from committing similar offenses by making an example of the individual offender; d) rehabilitation, the improvement of the offender's skills and morals so as to make him or her a better person; and 5) incapacitation, the removal of an individual from a setting in which he or she can do harm.
Thus, despite the language in our cases reminding us that the purpose of hearings such as this is not "to mete out punishment," it should be clear to all that such goals as specific deterrence, general deterrence, rehabilitation and, in those cases where disbarment is warranted, incapacitation, are legitimate functions of the presentment process. The language about punishment is thus correctly understood to apply to "retribution," for which the word "punishment" is frequently, but only partially correctly, substituted. The purpose of professional disciplinary proceedings is indeed not to inflict suffering on a respondent to get even for the suffering he or she inflicted upon the victims of his or her misconduct. That would be retributive. But the purposes of these proceedings include assuring that this particular respondent does not violate our rules of professional conduct in the future, that other attorneys who become aware of the court's actions take heed and modify their own behavior, and that conditions be put into place to assure the respondent's continued recovery from his depression.[9]
When these legitimate purposes are viewed against the nature and degree and extent over time of the respondent's misconduct, as well as in the context of the still tentative steps he has been making toward recovery from the mental and emotional conditions that contributed to that misconduct, this court cannot conclude that the reprimand sought by the CT Page 6568 respondent is a sufficient response to the purposes which this process seeks to fulfill.
By all accounts, the Respondent has been a fine attorney throughout most of his 35 year practice, but during the course of a difficult period in his life, he has served many of his clients exceedingly poorly. The conditions that gave rise to his misconduct have in part been remedied, but there is still more that needs to be accomplished before the court would feel comfortable in permitting the Respondent to continue to practice law.
Moreover, the court is concerned that some period of suspension is appropriate to deter the Respondent from future misconduct by impressing on him the seriousness with which his misconduct is viewed. Additionally, although skeptical of the concept of"general deterrence" when applied to the sentencing of criminal defendants, this court believes that in the small universe that is the Bar, with its highly organized and effective avenues of communication, general deterrence is a legitimate goal. It is altogether realistic to believe that an attorney who finds himself or herself in emotional difficulties, having learned of this Respondent's suspension under comparable circumstances, would seek help before, rather than after, his or her professional world had begun to fall apart. Finally, there is no question that the court is in position to impose conditions that will encourage the Respondent's rehabilitation.
In an effort to balance all of these concerns, the court suspends the Respondent's right to practice law for a period of two years, but retains jurisdiction over this case for the purpose of monitoring the Respondent's compliance with the following conditions: 1) that he remain in psychiatric treatment until medically discharged; and 2) that he register for and pass either the Multi-State Professional Responsibility Examination or a course on legal ethics offered by an accredited law school or other entity acceptable to the Petitioner. Six months after the effective date of this suspension, or at such later date upon which he feels that he is ready to do so, the Respondent may file a motion, directed to the undersigned's attention, requesting that the court review his progress and determine whether the balance of the suspension should be vacated. Such motion is to be accompanied by a report from the Respondent's psychiatrist detailing his progress since the date of the hearing in this case and stating the therapist's opinion, if any, about the respondent's fitness to practice law, as well as proof of the successful completion of the prescribed ethics course.
Attorney Dennis Driscoll is appointed to safeguard the interests of the respondent's clients during the period of his suspension. This suspension CT Page 6569 shall be effective on July 1, 2002.
Jonathan E. Silbert, Judge