STATEWIDE GRIEVANCE COMMITTEE *v.*
CHRISTOPHER C. FOUNTAIN
(AC 18854)

O'Connell, C. J., and Foti and Vertefeuille, Js.

Argued October 28, 1999—officially released January 18, 2000

*Robert A. Brooks*, with whom was *Mario R. Borelli*, for the appellant (defendant).

*Maureen A. Horgan*, assistant bar counsel, for the appellee (plaintiff).

*Opinion*

O'CONNELL, C. J. The defendant, Christopher C. Fountain, appeals from the trial court's judgment suspending his license to practice law for three months. The defendant claims that the imposition of this sanction was improper because (1) the suspension constituted punishment and (2) the length of the suspension amounted to an abuse of discretion. We affirm the judgment of the trial court.

The following facts are relevant to the resolution of this appeal. The defendant is a practicing attorney who was admitted to the bar of this state in 1983. In 1993, while representing a client in an arbitration proceeding before the National Association of Securities Dealers, Inc., the defendant forged the signature of an affiant and then notarized the affidavit. Thereafter, he forwarded the affidavit to the opposing counsel in the arbitration proceeding. At the time of this misconduct, the defendant was dependent on alcohol.

On May 2, 1994, the opposing attorney filed a complaint with the statewide grievance committee (committee). On July 29, 1994, the grievance panel for the judicial district of Stamford-Norwalk[1] found probable cause to believe that the defendant violated the Rules of Professional Conduct (rules).[2] On October 19, 1995,

---

[1] Each judicial district has one or more grievance panels consisting of two members of the bar and one layperson, all of whom are appointed by the Superior Court. The committee refers complaints to a panel, which then investigates and determines whether probable cause exists. *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 282 n.9, 715 A.2d 712 (1998).

[2] The rules, which were adopted in 1986 by the judges of the Superior Court, govern the professional rights and obligations of attorneys practicing within Connecticut. *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 278 n.1, 715 A.2d 712 (1998). The rules were renumbered as part of the Practice Book revision of 1998. In this decision, we refer to the revised rules.

the committee voted to file a presentment in the Superior Court. On December 31, 1997, the presentment proceeding commenced, and the committee sought the suspension of the defendant's license to practice law for not less than one year. At the time of the presentment, the defendant's drinking problem had been under control for more than four years. The court considered this fact along with the committee's suspension recommendation and other factors before imposing a lighter sanction of suspension from the practice of law for three months.

I

The defendant first claims that the object of a disciplinary hearing is to protect the public rather than to punish an attorney and that, because he was a rehabilitated alcoholic as of the date of the presentment proceeding, the sanction by the trial court was purely punitive and therefore improper. We do not agree.

Our analysis begins with a review of the legal principles that govern attorney disciplinary proceedings. The regulation of attorney disciplinary matters exists within the broader framework of the relationship between attorneys and the judiciary. *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 237, 558 A.2d 986 (1989). An attorney, as an officer of the court, is continually accountable to the court for the manner in which the privilege to practice law is exercised and is subject to the court's discipline. Id., 237–38. Because the image of a dishonest lawyer is very difficult to erase from the public mind-set, attorneys are expected to be leading citizens who act with candor and honesty at all times. *Statewide Grievance Committee* v. *Presnick*, 18 Conn. App. 316, 324, 559 A.2d 220 (1989). An attorney is admitted to the practice of law on the implied condition that the continuation of this right depends on remaining a fit and safe person to exercise it. *In re Peck*, 88 Conn.

447, 450, 91 A. 274 (1914). When an attorney, by misconduct in any capacity, becomes unfit or unsafe to be entrusted with the responsibilities and obligations of the profession, the right to continue in the enjoyment of the profession may be suspended. Id., 451. It is paramount that an attorney be upright and trustworthy and "resolve to be honest at all events; and if [he or she] cannot be an honest lawyer, [he or she should] resolve to be honest without being a lawyer." 2 A. Lincoln, Collected Works of Abraham Lincoln (R. Basler ed., 1953), p. 82.

A court disciplining an attorney does so not to punish the attorney, but rather to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession. *In re Durant*, 80 Conn. 140, 147, 67 A. 497 (1907). Inherent in this process is a large degree of judicial discretion. *Grievance Committee* v. *Broder*, 112 Conn. 263, 266, 152 A. 292 (1930). A court is free to determine in each case, as may seem best in light of the entire record before it, whether a sanction is appropriate and, if so, what that sanction should be. *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 678–79, 646 A.2d 781 (1994). Accordingly, a court may accomplish the goal of protecting the public and the courts by imposing a sanction that deters other attorneys from engaging in similar misconduct.

The defendant claims that the suspension of his license to practice law can be viewed only as punishment and therefore was not proper. The defendant, however, stipulated that his misconduct violated 8.4 (4) of the rules.[3] The court found that the defendant's

---

[3] Rule 8.4 provides in relevant part: "It is professional misconduct for a lawyer to . . .

"(4) Engage in conduct that is prejudicial to the administration of justice . . . ."

actions also violated 3.4 (2)[4] and 8.4 (1)[5] and (3)[6] of the rules, and that his actions involved a dishonest motive.[7] The court considered these violations in determining whether a sanction was appropriate, properly focusing on public policy considerations rather than on punishment.[8]

Although the defendant claims that the court punished him, he is unable to point to any evidence that the court was being punitive. He nevertheless argues that punishment may be inferred because the court did not fully explain why the suspension was necessary to protect the public or to safeguard the administration of justice. He suggests that we establish a rule requiring

[4] Rule 3.4 provides in relevant part: "A lawyer shall not . . .

"(2) Falsify evidence . . . ."

[5] Rule 8.4 provides in relevant part: "It is professional misconduct for a lawyer to . . .

"(1) Violate or attempt to violate the Rules of Professional Conduct . . . ."

[6] Rule 8.4 provides in relevant part: "It is professional misconduct for a lawyer to . . .

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

[7] At oral argument the defendant claimed that it was an abuse of the trial court's discretion to conclude under the facts of this case that he acted with a dishonest motive or with intent. The defendant's motive for filing the false affidavit, however, raises factual questions requiring careful consideration of circumstantial evidence. See *State* v. *Diaz*, 237 Conn. 518, 541, 679 A.2d 902 (1996) ("[o]rdinarily, intent can only be inferred by circumstantial evidence; it may be and usually is inferred . . . from conduct"). Our review of the court's factual findings is limited to a determination of whether those findings are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." (Internal quotation marks omitted.) *Lewis* v. *Statewide Grievance Committee*, 235 Conn. 693, 697, 669 A.2d 1202 (1996). We hold that this finding was not clearly erroneous.

[8] The court, in its memorandum of decision, noted: "The [trial] court is very well aware of the necessity of enforcing our disciplinary rules. I believe that the improvement of the image of the profession in the eyes of the public must be the single most essential goal of the profession. Without the confidence of those who use the legal system, our profession as we know it is in danger. Unless the public believes we are policing ourselves honestly, fairly and with due regard for the interests of those whom we serve, our right to do so will one day be stripped from us."

trial courts to analyze not only why a particular sanction is necessary, but also why the sanction is not punishment. We see no need to implement such a burdensome rule, considering that the court here properly analyzed the issue, and its memorandum of decision reflected its knowledge and understanding of the legal principles involved in attorney disciplinary proceedings.[9] This court may assume, therefore, that the trial court acted properly and considered all applicable legal principles before rendering judgment. See *Rosenblit* v. *Danaher*, 206 Conn. 125, 134, 537 A.2d 145 (1988). Accordingly, we are persuaded that the court properly determined that a suspension would safeguard the administration of justice and protect the public, and was, therefore, appropriate.

## II

The defendant next argues that even if a sanction was warranted, the imposition of the three month suspension constituted an abuse of discretion. We do not agree.

The court had inherent judicial power to determine an appropriate sanction in light of the entire record before it and was free to act as it deemed best in the administration of justice. *Statewide Grievance Committee* v. *Glass*, 46 Conn. App. 472, 478, 699 A.2d 1058 (1997). In cases involving the discipline of an attorney,

---

[9] After determining that the defendant had violated the rules, the court stated: "[A] court charged with imposing sanctions on an errant attorney must always carefully evaluate the facts and circumstances leading to and surrounding a particular violation. Our task is not to mete out punishment to an offender, but [to act so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession. . . . It befalls this court, then, to determine whether the acts or the conduct of the [defendant], considering the circumstances under which he committed them, and considering the [defendant's] character and fitness to practice law, are sufficient to warrant his suspension therefrom."

this court must defer to the discretion of the trial court as the fact finder because it is in the best position to evaluate the evidence. Id., 479. Whether this court would have imposed a different sanction is not relevant. Rather, we must determine whether the trial court abused its discretion in determining the nature of the sanction. Id. We may reverse the court's decision in this regard only if that decision was unreasonable, unconscionable or arbitrary, and was made without proper consideration of the facts and law pertaining to the matter submitted. Id., 480.

Courts considering sanctions against attorneys measure the defendant's conduct against the rules. Although the rules define misconduct, they do not provide guidance for determining what sanctions are appropriate. Id., 480–81. Connecticut courts reviewing attorney misconduct, therefore, have consulted the American Bar Association's Standards for Imposing Lawyer Sanctions (standards); see ABA-BNA Lawyers' Manual on Professional Conduct, "Standards for Imposing Lawyer Sanctions," pp. 01:801–54; which provide guidance. *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 673 n.10. Although the standards have not been officially adopted in Connecticut, they are used frequently by the Superior Court in evaluating attorney misconduct and in determining discipline, as they were by the court here. See *Statewide Grievance Committee* v. *Spirer*, 46 Conn. App. 450, 463–64, 699 A.2d 1047 (1997), rev'd on other grounds, 247 Conn. 762, 725 A.2d 948 (1999).

According to standard 3.0, a court imposing a sanction should consider the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct and the existence of aggravating[10] or

---

[10] Standard 9.2 provides that the presence of aggravating factors may justify an increase in the degree of discipline to be imposed. Under standard 9.22 (b), a dishonest or selfish motive is an aggravating factor.

mitigating[11] factors. Standards 6.1 and 6.12 provide that a suspension generally is appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit or misrepresentation.[12]

In determining the appropriate sanction, the court explicitly considered several mitigating factors, including that (1) at the time of the misconduct the defendant was an alcoholic suffering from alcohol dependency, (2) this was a single act of misconduct rather than a pattern of misconduct and (3) the defendant had never previously been disciplined for misconduct. The court also noted in its memorandum of decision that at the time of the presentment, the defendant's drinking problem had been under control for at least four years and that the presentment took place nearly five years after the act of misconduct.

After weighing these mitigating factors against the presence of one aggravating factor, namely that the defendant's misconduct involved a dishonest motive, the court imposed a three month suspension. Although this suspension was substantially lighter than that requested by the committee, the defendant nevertheless claims that it constituted an abuse of discretion because the court did not give sufficient weight to the mitigating factors. It is clear, however, that the court gave substantial weight to the presence of the mitigating factors. The term of the suspension was one fourth of that requested by the committee and was less than that provided for in the standards. Standard 2.3, titled, "Sus-

---

[11] Standard 9.3 provides that the presence of mitigating factors may justify a reduction in the degree of discipline to be imposed. Under standard 9.32, mitigating factors include the absence of a prior disciplinary record, alcoholism and a delay in the disciplinary process.

[12] As discussed in part I of this opinion, the defendant stipulated that his misconduct was prejudicial to the administration of justice and the court found that he had acted with a dishonest motive.

pension," provides in relevant part that "suspension should be for a period of time equal to or greater than six months . . . ." The court, exercising its broad discretion, departed from this standard in the defendant's favor. Accordingly, we are persuaded that the court did not abuse its discretion when it imposed the three month suspension.

Before we conclude, however, we will address the defendant's concern that our ruling may discourage attorneys with substance abuse problems from seeking treatment. The defendant asserted at oral argument that a decision in his favor would be positive for the members of the bar as well because attorneys would understand that if they deal with their substance abuse problems, they would not be punished for so doing. Although we encourage all who suffer from drug and alcohol dependency to deal with their problems, we want to make it clear that the more appropriate time to deal with such issues is prior to the occurrence of misconduct rather than afterward. An attorney who seeks treatment without having violated the rules will not be disciplined for so doing. An attorney who gains control over his or her substance abuse problems only after committing misconduct, however, may be disciplined, not because the attorney is in treatment but rather because the attorney's conduct necessitates that result to protect our courts and the public. We will not excuse conduct that brings disrepute to the legal profession merely because an attorney, subsequent to the conduct, gains control over his or her addiction. We endeavor, therefore, to advise each member of the bar that substance abuse treatment should be used as a sword to cut off misconduct before it occurs rather than as a shield to insulate misdeeds.

The judgment is affirmed.

In this opinion the other judges concurred.