STATEWIDE GRIEVANCE COMMITTEE *v.*
REBECCA L. JOHNSON
(AC 28279)

Gruendel, Lavine and Hennessy, Js.

Argued February 8—officially released May 27, 2008

*Rebecca L. Johnson,* pro se, the appellant (defendant).

*Maureen A. Horgan,* assistant bar counsel, for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendant, Rebecca L. Johnson, an attorney licensed to practice law in the state of Connecticut,[1] appeals from the judgment rendered on a presentment in which the trial court adjudged her guilty of professional misconduct in violation of rules 1.4 (a),[2] 1.5 (b) and (c)[3] and 1.15 (b)[4] and suspended her from the practice of law for eighteen months. On appeal, the defendant claims that the court (1) did not conduct the presentment proceeding de novo, and (2) violated her due process rights when she was unable

[1] The defendant is presently suspended from the practice of law.

[2] Rule 1.4 (a) of the Rules of Professional Conduct (2003) provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] Rule 1.5 of the Rules of Professional Conduct (2003) provides in relevant part: "(b) When the lawyer has not regularly represented the client, the basis or rate of the fee, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and the scope of the matter to be undertaken shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation. This subsection shall not apply to public defenders or in situations where the lawyer will be paid by the court or a state agency.

"(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subsection (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."

[4] Rule 1.15 (b) of the Rules of Professional Conduct (2003) provides: "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

to confront and to cross-examine the complainant during the presentment. We affirm the judgment of the trial court.

The following facts are relevant to the defendant's appeal. The defendant was duly admitted as a member of the Connecticut bar on or about December 10, 1993. In December, 2001, the complainant, Anthony Amabile, retained the defendant to represent him regarding a claim of employment discrimination against his former employer. The complainant gave the defendant a $750 retainer, and a retainer agreement was signed. The defendant prepared a complaint dated February 19, 2002, and filed it with the commission on human rights and opportunities (commission).Thereafter, the commission forwarded the complaint to the Equal Employment Opportunity Commission (federal agency) for processing. On April 24, 2002, the federal agency contacted the complainant by letter, requesting additional information to process the complaint. The federal agency informed the complainant that the information could be given either through an in-person interview at the federal agency or through a questionnaire, but the information had to be received within thirty days or the complaint would be dismissed. The defendant requested the questionnaire, but the federal agency did not send a complete document. On or about May 30, 2002, the defendant requested the missing pages from the federal agency. On June 24, 2002, the full questionnaire was sent to the defendant via facsimile. In July, 2002, the defendant learned that as a result of a prior presentment, she was being disciplined by the courts and was suspended from the practice of law for one year beginning on September 1, 2002. On February 24, 2003, the federal agency sent notice to the defendant that it had dismissed the complainant's claim because the requested information had never been provided. The dismissal notice advised the complainant that he

had ninety days from that date to file a lawsuit in either state or federal court. No action was filed on the complainant's behalf. He therefore requested a return of the $750 retainer, but no refund was made.

The plaintiff, the statewide grievance committee, presented its case to the court at a hearing on August 4, 2006. The plaintiff called the defendant to testify and also introduced a number of exhibits. The plaintiff filed transcripts of the proceedings before the plaintiff's reviewing committee[5] in the case and a record of past grievances that had been filed against the defendant. The plaintiff rested its case on this evidence. The defendant was allowed a continuance to subpoena witnesses for her defense. When court reconvened in this matter on August 24, 2006, the defendant filed a motion to dismiss on the basis of the alleged denial of her due process rights to a fair trial. This motion was based on her claim that she had been denied the right to cross-examine the complaining witness during the Superior Court presentment proceeding. When asked by the court whether she had the chance to question the complainant at the prior hearing before the reviewing committee, the defendant stated that she had. The court questioned the plaintiff as to the complainant's availability, and the court was informed that the complainant was residing out of state and was unable to make the trip to court. The court denied the motion to dismiss and admitted into evidence the transcript of the complainant's prior testimony and his cross-examination by the defendant.

On November 1, 2006, in a memorandum of decision, the court held that the plaintiff had demonstrated by clear and convincing evidence that the defendant was guilty of professional misconduct. The court suspended the defendant from the practice of law for eighteen

[5] See Practice Book § 2-35.

months to run concurrently with the prior imposed suspension that she was under at that time. It was further ordered that to be readmitted to practice, the defendant must apply for such readmission and show recent participation in a professional ethics course focusing on Connecticut's Rules of Professional Conduct and a course in law office management, both to last a minimum of three hours, and to take and pass the Multistate Professional Responsibility Examination within three years of the application for readmission.

Before addressing the defendant's specific claims, our analysis begins with a review of the legal principles that govern attorney disciplinary proceedings. "An attorney is admitted to the practice of law on the implied condition that the continuation of this right depends on remaining a fit and safe person to exercise it." *Statewide Grievance Committee* v. *Fountain*, 56 Conn. App. 375, 377, 743 A.2d 647 (2000). The Rules of Professional Conduct bind attorneys to uphold the law and to act in accordance with high standards in both their personal and professional lives. See Rules of Professional Conduct, preamble. As officers and commissioners of the court, attorneys are in a special relationship with the judiciary and are "subject to the court's discipline." *Statewide Grievance Committee* v. *Fountain*, supra, 377.

It is well established that "[j]udges of the Superior Court possess the inherent authority to regulate attorney conduct and to discipline the members of the bar. . . . It is their unique position as officers and commissioners of the court . . . which casts attorneys in a special relationship with the judiciary and subjects them to its discipline. . . . [T]he judges have empowered the statewide grievance committee to file presentments in Superior Court seeking judicial sanctions against those claimed to be guilty of misconduct. . . .

In carrying out these responsibilities . . . the [state-wide grievance committee] is an arm of the court . . . ." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 838, 633 A.2d 296 (1993), quoting *Sobocinski* v. *Statewide Grievance Committee*, 215 Conn. 517, 525–26, 576 A.2d 532 (1990). "A court disciplining an attorney does so not to punish the attorney, but rather to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession." *Statewide Grievance Committee* v. *Fountain*, supra, 56 Conn. App. 378.

Our court recently has clarified the appropriate appellate standard of review for cases involving attorney grievance appeals. In *Brunswick* v. *Statewide Grievance Committee*, 103 Conn. App. 601, 931 A.2d 319, cert. denied, 284 Conn. 929, 934 A.2d 244 (2007), this court, after thorough analysis, determined that "the clearly erroneous standard . . . is the preferable standard of review in attorney grievance appeals." Id., 613. "A court reviewing an attorney disciplinary proceeding, therefore, retains its inherent authority over the discipline of its officers in those instances when, despite the evidence in the record, it nevertheless is left with a definite and firm conviction that a mistake has been made." Id., 614. With that standard in mind, we turn to the defendant's claims.

I

The defendant claims that the court did not conduct the presentment proceeding de novo. The plaintiff argues that after it initiated the presentment, a de novo evidentiary proceeding was held. We agree with the plaintiff.

The grievance review committee and the courts have their own distinct functions in the grievance process. "[G]rievance panels and reviewing committees carry

out what are essentially investigative, fact-bound functions that only determine the probability that an act of attorney misconduct has occurred. [T]here is no requiremaent that, in order to maintain the essential attributes of the judicial power, all determinations of fact in constitutional courts shall be made by judges. . . . For its part, the statewide grievance committee's only function . . . was to initiate the presentment. . . . The ultimate decision as to whether an act of misconduct had occurred reposed solely with the judge, as did the power to administer an appropriate sanction." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 167, 575 A.2d 210 (1990). We conclude that the trial court conducted a de novo evidentiary proceeding on the presentment in this case.

## II

The defendant claims that she was denied due process of law when she was not able to confront and to cross-examine the complainant at the presentment before the court. The plaintiff argues that the court was correct in admitting the transcripts of the reviewing committee hearings into evidence upon the unavailability of the complainant. We agree with the plaintiff.

The following facts are relevant to the defendant's claim. The plaintiff offered the transcripts of the reviewing committee's hearings without objection from the defendant. It was only when the defendant was told that the plaintiff was resting after her testimony that she objected to the offer of the complainant's testimony through the transcripts. The defendant was then given a continuance to subpoena the witnesses she wanted to present for her case-in-chief. On the date that was set for resuming the hearing, the defendant had not subpoenaed the complainant and instead went forward with an oral motion to dismiss on the basis of her claim

that she was denied her right to cross-examine the complainant. At that hearing, counsel for the plaintiff stated to the court that she had spoken to the complainant since the first hearing and that he lived out of state and was not able to make the trip to court. During a colloquy with the court, the defendant twice admitted that she had cross-examined the complainant at the prior reviewing committee hearing. The court made a finding orally that the complainant was unavailable and that there was no evidence before the court that the reliability or veracity of the complainant had been brought into question. After ruling, the court took a brief recess so that the defendant could consider what evidence she wanted to present in her defense. Representing herself, she then presented her case-in-chief to the court.

"We begin our analysis with a review of the legal principles that govern attorney disciplinary proceedings. In part because such actions are adversary proceedings of a quasi-criminal nature . . . attorneys subject to disciplinary proceedings are entitled to due process of law. . . . A license to practice law is a property interest that cannot be suspended without due process. . . . Due process, however, is a flexible concept, and a determination of the particular process that is due depends on the nature of the proceeding and the interests at stake." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 306–307, 627 A.2d 901 (1993).

Because a grievance hearing is quasi-criminal in nature, we look to criminal law to resolve the defendant's claim. "Under *Crawford* v. *Washington*, [541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)], the hearsay statements of an unavailable witness that are testimonial in nature may be admitted under the sixth amendment's confrontation clause only if the defendant has

had a prior opportunity to cross-examine the declarant."[6] *State* v. *Slater*, 285 Conn. 162, 169, 939 A.2d 1105 (2008).

The record clearly shows that the defendant had a full and fair opportunity and did in fact cross-examine the complainant at the reviewing committee hearing. Admission of the complainant's prior testimony did not deprive the defendant of due process.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Under the United States Supreme Court's decision in *Crawford*, a testimonial statement is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." (Internal quotation marks omitted.) *Crawford* v. *Washington*, supra, 541 U.S. 51; *State* v. *Slater*, 285 Conn. 162, 170, 939 A.2d 1105 (2008). The complainant's testimony was therefore testimonial.