DISCIPLINARY COUNSEL *v.* JACEK I. SMIGELSKI
(AC 31504)

Bishop, Harper and Peters, Js.

Argued May 24—officially released September 28, 2010

*James F. Sullivan*, with whom was *Jacek I. Smigelski*, pro se, for the appellant (defendant).

*Suzanne B. Sutton*, assistant chief disciplinary counsel, for the appellee (plaintiff).

### Opinion

PETERS, J. The principal issue in this appeal from the imposition of disciplinary sanctions on an attorney is whether, having found initially that a contingent fee agreement was neither unlawful nor unethical, the trial court nonetheless properly sanctioned the attorney for having charged an unreasonable fee and for having disbursed the fee to himself in an unreasonable manner. Under the circumstances of this case, in which the attorney improperly calculated the amount that the contingency fee agreement entitled him to collect and improperly collected his fee from assets entrusted to him as a fiduciary, we affirm the judgment of the trial court imposing sanctions on the attorney.

On January 4, 2007, Kazimierz Kosiorek initiated grievance proceedings against the defendant, Jacek I. Smigelski, by filing a complaint with the statewide grievance committee that charged the defendant with having violated the Rules of Professional Conduct by withholding settlement proceeds from a sale of real property by the estate of Stanislaw Kosiorek. After a finding of probable cause by a local grievance panel, the reviewing committee of the statewide grievance committee held an evidentiary hearing and thereafter directed disciplinary counsel to file a presentment against the defendant in the Superior Court.

The presentment filed by disciplinary counsel charged the defendant with having violated rule 1.5 (a) of the Rules of Professional Conduct (2006) by charging a fee that was unreasonable in light of all the relevant circumstances and with having violated rule 1.15 (b) of the Rules of Professional Conduct (2006)[1] by distributing funds to himself, as his fee, out of the proceeds of the sale of the Kosiorek home rather than seeking payment from the executor and for refusing to refund these sums upon demand from the lawful agents of the estate. Conducting a *de novo* review of the complaint; *Statewide Grievance Committee* v. *Johnson*, 108 Conn. App. 74, 79, 946 A.2d 1256, cert. denied, 288 Conn. 915, 954 A.2d 187 (2008); the trial court held that disciplinary counsel had proved both charges by clear and convincing evidence and imposed sanctions on the defendant. The defendant has appealed.[2]

The record establishes that the defendant performed two related but separate professional services for the estate of Stanislaw Kosiorek. First, in the Superior Court, he represented the executor of the estate in clearing the estate's title to its only asset, a house at 28 Terra Road, Plainville. Second, in the Probate Court, he represented the executor in the probate administration of the estate. The dispute between the parties arises in significant part out of the defendant's improper intermingling of these two professional roles.

The trial court's undisputed findings of fact establish that, on June 15, 2006, Stanley Kosiorek, the executor of Stanislaw Kosiorek's estate, hired the defendant to represent the Kosiorek family in an action that they had brought against Bronislawa Kosiorek. After Stanislaw

---

[1] All references hereinafter to the Rules of Professional Conduct are to the 2006 revision unless otherwise indicated.

[2] The defendant's appeal challenges only the validity of the trial court's findings of misconduct. The defendant has raised no issue with respect to the sanctions imposed by the court.

Kosiorek's death at the age of eighty-three, his heirs had discovered that, less than one year earlier, he had married Bronislawa Kosiorek and had transferred to her a survivorship interest in his Terra Road property. The heirs had brought a civil action to have the transfer set aside, but settlement negotiations in the Superior Court had foundered when the widow declined to accept a payment of less than $45,000 to execute a quitclaim of the property back to the estate. The heirs sought the defendant's assistance in resolving this impasse.

Paying the defendant a retainer of $5000, Stanley Kosiorek executed a written fee agreement, both in his own name and as "the Executor [of] the Estate of [Stanislaw] Kosiorek." The agreement was a hybrid, stating that "the fee for legal services rendered by [the defendant], will be based on an hourly charge of $225.00 per hour or it will be contingent upon recovery of benefits and shall be ONE-THIRD of the gross judgment or settlement, which ever amount is greater."[3]

The court observed that, if there was a high value recovery to the estate, this fee agreement allowed the defendant to charge a fee higher than would have been earned at his normal hourly rate. Nonetheless, it held that, on its face, the agreement was not invalid.[4]

[3] The court noted that this retainer agreement was not governed by General Statutes § 52-251c, which governs only contingency fee agreements for legal services in civil actions for personal injury, wrongful death or property damage.

[4] In its opinion, the court expressly found that "[a]lthough [the defendant] understood that he was to be representing Stanley Kosiorek in Stanley Kosiorek's capacity as executor of the estate of Stanislaw Kosiorek, [the defendant] drafted the retainer agreement to read 'Client: Stanley Kosiorek and Stanley Kosiorek as the Executor of the Estate of Stanislaw Kosiorek.' " In the absence of a cross appeal, we have no occasion to consider the validity of the trial court's ruling that the fee agreement was valid both with respect to Stanley Kosiorek individually and with respect to Stanley Kosiorek as executor. Therefore, our silence on the troubling but unpresented question of the fee agreement's validity should not be taken as our tacit approval of it.

In August, 2006, without keeping time records, the defendant negotiated a favorable settlement in the estate's litigation with Stanislaw Kosiorek's widow. In return for a payment of $35,000, instead of the $45,000 that she had earlier demanded, she executed a quitclaim deed of the property back to the estate.

Thereafter, with the approval of the Plainville Probate Court, the heirs to the Kosiorek estate agreed to sell the property to a member of the family and his wife for $212,500. They also agreed that they would contribute $42,500 from the estate to the buyers as a down payment for their mortgage.

The defendant represented the estate at the December 21, 2006 closing for the sale of the property. According to the United States Department of Housing and Urban Development Statement, Form HUD-1 (HUD-1),[5] the net proceeds from the sale to the estate were $155,300.82. Stanley Kosiorek signed the paperwork and authorized a check in this amount to be made out to "Jacek Smigelski, Trustee."

On December 26, 2006, when Stanley Kosiorek came to the defendant's office to pick up the check for the funds payable to the estate as a result of the closing, the amount of the check that he received from the defendant was only $88,462.50. The defendant explained that he had paid $1004.99 to the Plainville Probate Court for miscellaneous Probate Court fees and had paid himself two checks totaling $65,833.33 as the one third contingency fee contemplated by their fee agreement. In a summary statement purporting to explain his calculation of this fee, the defendant asserted that, with certain adjustments, he was entitled to $65,833.33 as his one third contingency fee based

---

[5] The HUD-1 settlement statement also documented a payment of $550 to the defendant for his services in connection with the closing.

on $257,000 as the value of the estate's property.[6] The defendant's explanation left Stanley Kosiorek speechless.

Initially, the defendant deposited the two checks in his personal savings account. On December 28, 2006, however, he "wired out" the amount of these checks to an unidentified account at an undisclosed location.

Upon learning of the defendant's disbursements, Kazimierz Kosiorek, Stanley Kosiorek's brother, retained counsel to initiate the present grievance proceedings against the defendant. On January 4, 2007, that counsel notified the defendant that the estate considered his fee unreasonable and demanded that the funds "be placed in escrow until this matter is finally resolved in the Plainville Probate Court." Replying that the funds were "gone," the defendant did not comply with this demand.

On January 23, 2007, the Plainville Probate Court conducted a hearing on the final accounting for the estate, which the defendant attended. The court disapproved the defendant's claimed right to a $65,833.33 fee as unreasonable and allowed him a fee of $15,000

---

[6] The explanatory memorandum that the defendant gave to Stanley Kosiorek on December 26, 2006, stated:

"Gross amount of settlement, (value of real estate $257,000.00)

Sale Price: 28 Terra Road, Plainville, CT; $212,500

Attorney's fees according to agreement 1/3 of the gross amount

of settlement that is (33.33% of $257,000 or $85,665.81)

less courtesy of $14,832.49; less $5,000 retainer or $65,833.33."

On May 7, 2007, during Probate Court proceedings on the executor's final account, the defendant amended the calculation of his fee as follows: "Gross amount of settlement, Sale Price, 28 Terra Road, Plainville, CT; $212,500.00

[Defendant] Attorney's Fees according to the agreement; 1/3 of the gross amount of settlement that is (33.33% of $212,500 or $70,832.63); less $5,000.00 retainer; plus, $1,000 fee to Mr. Jeffrey Luber, expert fee; less courtesy $999.30; total fee due $65,833.33."

Significantly, in a footnote to this second summary, the defendant noted that he had not charged any fees for his probate work.

for preparations for the sale of the property,[7] plus $1000 for reimbursement of costs. Accordingly, the Probate Court ordered the defendant to return the remaining $54,833.33 of his fee to the estate. The defendant has neither complied with this order nor initiated legal proceedings to challenge its validity. See General Statutes § 52-570a.

I

## VIOLATION OF RULE 1.5 (a)

The defendant challenges the sufficiency of the evidence to support the court's finding that he violated rule 1.5 (a)[8] "by charging a fee that was unreasonable

---

[7] There is nothing in the record to clarify whether this fee was intended to compensate the defendant for his services in the Kosiorek estate's settlement of its litigation with Bronislawa Kosiorek as well as for his services in the probate administration of the Kosiorek estate.

[8] Rule 1.5 of the Rules of Professional Conduct (2006) provides in relevant part: "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The fee customarily charged in the locality for similar legal services;

"(4) The amount involved and the results obtained;

"(5) The time limitations imposed by the client or by the circumstances;

"(6) The nature and length of the professional relationship with the client;

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) Whether the fee is fixed or contingent. . . .

"(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subsection (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination. . . ."

in light of all the relevant circumstances . . . ." He maintains that (1) having found that the fee agreement between the defendant and Stanley Kosiorek was "neither unlawful nor unethical," the court had no legal basis for concluding that the fee that the defendant charged the Kosiorek estate was unreasonable, (2) the court improperly found a violation of rule 1.5 without considering the factors enumerated in the subdivisions of rule 1.5 (a) and by considering evidence not specified in those subdivisions, and (3) the court's adverse findings were based solely on its disbelief of the defendant's testimony because the facts of record on which the court relied did not establish a violation of the rule by clear and convincing evidence. We are not persuaded.

A

The defendant based his claim to recover a fee of $65,833.33, in addition to his initial retainer of $5000, on the provision in his fee agreement entitling him to recover "one-third of the gross judgment or settlement" received by the estate. On appeal, he emphasizes the court's initial holding that this retainer was valid. Citing case law upholding the validity of contingency fee agreements; see, e.g., *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 270, 828 A.2d 64 (2003); the defendant, in effect, contends that this finding of initial validity ends the matter. We do not agree.

A fee agreement is not self-executing. It does not and cannot authorize an attorney to violate his fiduciary obligation to his client. See *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 651–52, 850 A.2d 145 (2004); *Marcus* v. *DuPerry*, 25 Conn. App. 293, 297, 593 A.2d 163 (1991), rev'd in part on other grounds, 223 Conn. 484, 611 A.2d 859 (1992). We agree with courts in other jurisdictions that have held that the fiduciary relationship between an attorney and a client requires "absolute perfect candor, openness and honesty, and

the absence of any concealment or deception." *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App. 2001); *Office of Disciplinary Counsel v. Lewis*, 493 Pa. 519, 529, 426 A.2d 1138 (1981). The court therefore properly held the defendant responsible for providing the Kosioreks an understandable explanation of the method by which he calculated his claimed right to a fee of $65,833.33.

The court reasonably found serious flaws in the defendant's calculations of this fee. In his first calculation, immediately after the closing, he relied on an estimated market price of $257,000 that bore no relationship to the sale price that the estate actually received for the property. In both calculations, he ignored the $35,000 that the estate had paid to Kosiorek's widow to enable the estate to sell the property. Furthermore, in both calculations, he included an undefined " 'courtesy' discount" that, the trial court found, may well have been intended to dissuade his client from disputing the amount of the fee.

Both calculations had a more fundamental flaw as well. It is axiomatic that, to collect a contingent fee for services rendered, an attorney must establish a nexus between fee and service. In this case, there is no such nexus between the defendant's services and the market value, however calculated, of the Kosiorek estate. At oral argument in this court, the defendant acknowledged that, as a result of the services he performed pursuant to his contingency fee agreement, the Kosiorek estate had been enriched in only one respect: it was able to obtain clear title to its Terra Road property by paying Stanislaw Kosiorek's widow $35,000 rather than the $45,000 offered by Bronislawa Kosiorek in a pretrial mediation. Furthermore, the defendant conceded that the legal services to which his fee agreement pertained did not include negotiation of the sales price of the Kosiorek estate's property.[9]

---

[9] The defendant acknowledged that "I was asked just to draft the contract and go to Probate Court [to have the contract approved]." Consistently, the

Accordingly, we hold that the court properly found that the defendant violated his fiduciary duty to his client by charging a fee that was unreasonable. We agree with the court that the defendant's failure to provide a coherent explanation of his calculation of his contingency fee supports the inference that he was fully aware of its impropriety. The record thus supports the court's conclusion that the defendant violated rule 1.5.

B

The defendant's second challenge to the finding that he violated rule 1.5 is that the trial court improperly found that he had violated this rule without expressly considering the eight factors listed in rule 1.5 (a) and by relying on evidence unrelated to those eight factors. We are not persuaded.

The defendant relies on a number of trial court opinions that have engaged in a detailed analysis of all of the factors listed under rule 1.5 (a).[10] The plaintiff notes, however, that other courts have used a broader analysis to affirm fee awards.[11]

We need not resolve this judicial disagreement because a subsequent amendment of the commentary

defendant's revised disbursement statement relating to his contingency fee agreement stated that he had *not* charged any fees for his probate work.

[10] See, e.g., *Woolf* v. *Statewide Grievance Committee*, Superior Court, judicial district of New Britain, Docket No. CV-98-0492717S (March 23, 1999); *Dean* v. *Statewide Grievance Committee*, Superior Court, judicial district of Hartford, Docket No. CV-07-4031616S (January 31, 2008) (44 Conn. L. Rptr. 811).

[11] Although the cases on which disciplinary counsel relies do not concern attorney discipline, they do cite rule 1.5 in reaching the conclusion that a broad analysis is appropriate for a determination of the reasonableness of attorney's fees. See, e.g., *Ernst* v. *Deere & Co.*, 92 Conn. App. 572, 576, 886 A.2d 845 (2005); see also *Krack* v. *Action Motors Corp.*, 87 Conn. App. 687, 695, 867 A.2d 86 (listing twelve factors to be considered in determining the reasonableness of attorney's fees and noting that "[t]hat list of factors is not, however, exclusive" and that "[t]he court may assess the reasonableness of the fees requested using any number of factors" [internal quotation marks omitted]), cert. denied, 273 Conn. 926, 871 A.2d 1031 (2005).

accompanying rule 1.5 now expressly states that "[t]he factors specified in (1) through (8) are not exclusive" and that all of them will not necessarily "be relevant in each instance." It seems to us reasonable to read this amendment to the rule as a clarification of the text of the original section. It therefore falls within the principle established by our Supreme Court that "[w]here an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect." *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987). Accordingly, we conclude that the trial court properly construed and applied rule 1.5.

C

The defendant's third claim is that the court improperly based its finding solely on its disbelief of the defendant's testimony and, correlatively, that the facts of record do not support the court's determination about the impropriety of his fee. Our recitation of the court's detailed finding of facts adequately rebuts the validity of this claim.

II

VIOLATION OF RULE 1.15 (b)

The defendant also challenges the court's finding that the evidence at trial established that he violated rule 1.15 (b)[12] by failing promptly to "deliver to [his] client . . . funds . . . that the client . . . is entitled to receive . . . ." The presentment charged the defendant with having violated this rule by "distributing [his] fee

___

[12] Rule 1.15 (b) of the Rules of Professional Conduct (2006) provides: "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

to himself from the proceeds of the sale of the Kosiorek home rather than seeking payment from the executor and [by] refusing to refund the sums when demanded to do so by the lawful agents of the estate."

The court made the following findings of fact in support of its conclusion that the defendant had violated rule 1.15 (b). It found incredible the defendant's testimony that (1) he had no reason to be aware of an impending dispute over the fee calculation and (2) he had disposed of the funds in such a way that he could not place the disputed sums in escrow. It relied instead on circumstantial evidence that the defendant intentionally had misused trust funds and deliberately had made it difficult for his client to challenge the defendant's conduct.

The court held that, as an attorney retained by the executor of an estate to perform services for the estate, the defendant was not privileged to act in denigration of the jurisdiction of the Probate Court. The court found that the return of the Terra Road property to the estate and the sale of the recovered estate asset were both actions that had been taken by the executor under the supervision of the Probate Court. Accordingly, the Probate Court was the forum in which the executor would have had to seek approval for his attorney's actions and for the payment of his fees.

Furthermore, the court held that the defendant improperly had paid himself out of funds that belonged to the estate. Having received the funds as trustee, the defendant was obligated to make a proper accounting to the estate. Even though such an accounting would have included his claim for an attorney's fee, that fact would not have authorized his disbursal of estate funds without the approval of the Probate Court. The defendant's unauthorized unilateral disbursement of the funds to himself violated not only his duty to the estate

but also his duty to his client, whom he placed at risk of personal liability for improper diversion of estate assets.

Accordingly, the court inferred that the defendant "had determined that the most effective way to keep the money as his own was to place it beyond the jurisdiction of the client, the Probate Court and the Superior Court, and to avoid participating, if at all possible, in an orderly process to resolve the fee dispute." Further, the court inferred from the confusing fee calculation that the defendant provided to his client that the defendant intentionally had made it difficult for his client to appreciate that the defendant had taken money to which the defendant was not clearly entitled. Finally, the court found that the defendant deliberately had negotiated his own checks to a destination that made these funds irretrievable by the time his client realized what had happened.

The defendant takes issue with the court's finding on multiple grounds that can be grouped under three headings. His main points on appeal are that (1) both his fee agreement with Stanley Kosiorek and the charging lien to which he was entitled because of his services in settling the Kosiorek estate's litigation with Bronislawa Kosiorek entitled him to collect his fee from the proceeds of the sale of the Kosiorek estate; (2) the court improperly attached significance to the proceedings held in the Plainville Probate Court; and (3) the court improperly relied on facts elicited in a separate action between Stanley Kosiorek and the defendant. In addition, he again argues that the court based its judgment on its disbelief of his testimony rather than on evidence of his misconduct. We are not persuaded of the validity of any of these claims of error.

A

In several related claims of error, the defendant claims that the court's criticism of the manner in which

he collected his fee was improper as a matter of law. He emphasizes the court's unchallenged finding that his hybrid fee agreement with Stanley Kosiorek was valid. He claims, as well, that the settlement that he negotiated on behalf of the Kosiorek estate with Bronislawa Kosiorek gave him a charging lien on estate assets to collect his fee. See *McNamara & Goodman* v. *Pink*, 44 Conn. Sup. 592, 601–602, 696 A.2d 1328 (1997). On both grounds, he maintains that the trial court improperly censured him for availing himself of the opportunity to collect the fee that he had earned from the estate assets that had been entrusted to him.

The difficulty with these claims is that they assume an equivalence between the *existence* of a valid unliquidated claim and the propriety of the *manner* in which the alleged claim has been enforced. Put differently, the defendant has cited no authority for the proposition that, as a matter of law, either his retainer agreement or his judgment lien authorized him to engage in self help that foreclosed the opportunity for an orderly judicial determination of the proper calculation of his fee. That this calculation was not self-evident is demonstrated by the significantly disparate calculations of the fee that the defendant himself tendered at different times.

We similarly are not persuaded by the defendant's claim that, as a matter of fact, at the time when he disposed of the Kosiorek estate's funds in his trust account, he had no reason to anticipate a fee dispute. We disagree with his assertion that Stanley Kosiorek acquiesced in the defendant's calculation of the fee. The defendant has not challenged the validity of the court's finding that, on December 26, 2006, Stanley Kosiorek was too stunned by the small amount of the check that the defendant gave to him to contest the manner in which the defendant had calculated his fee. He similarly has not challenged the court's finding that, the

very next day, Kazimierz Kosiorek called him for an explanation. On this record, it is disingenuous for the defendant to maintain that he innocently disposed of the disputed funds.

Finally, we disagree with the defendant's claim that the court improperly faulted the manner in which he calculated and collected the contingency fee to which he claims to have been entitled by the terms of his fee agreement. Although, in form, the defendant arguably complied with his obligation promptly to render a full accounting to his client, we agree with the court that, in substance, he failed to comply with his ethical obligations. Furthermore, even a more adequate disclosure of the manner in which he had calculated his fee would not have justified his unauthorized removal of funds to escape the jurisdiction of the Connecticut court system.

## B

The defendant maintains that the trial court improperly linked his claim to enforce his fee agreement with Stanley Kosiorek with the Kosiorek estate proceedings conducted by the Plainville Probate Court. He criticizes the court's rulings that (1) rule 1.15 (b) required him to obtain the approval of the Probate Court before a final disbursement of the funds entrusted to him by Stanley Kosiorek and (2) the decision of the Probate Court was admissible into evidence in this case. We disagree with both claims.

According to the defendant, the Plainville Probate Court had the authority to distribute only the $88,462.50 that remained as estate assets after he had collected his fee. In support of this argument, the defendant relies on *Constas* v. *Tucci*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-01-0182864 (January 23, 2007), in which an attorney successfully brought an action pursuant to § 52-570a to collect a fee from an executor in the executor's *individual* capacity. We are

not persuaded. Although that case might have supported a § 52-570a action in the Superior Court against Stanley Kosiorek individually, it does not address or constrain the authority of the Probate Court to adjudicate claims to all of the assets that belonged to the estate. We agree with disciplinary counsel that, in this case, except for the administrative costs associated with its sale, those assets included the proceeds of the sale of the Kosiorek property in their entirety.

Alternatively, the defendant disputes the validity of the court's reliance in this case on *any* evidence arising out of the proceedings in the Plainville Probate Court. Relying on case law holding that probate courts have no common-law jurisdiction; *In re Joshua S.*, 260 Conn. 182, 214, 796 A.2d 1141 (2002); and that appeals from probate are trials de novo; *Statewide Grievance Committee* v. *Johnson*, supra, 108 Conn. App. 79; the defendant maintains that the Probate Court had no authority to adjudicate the reasonableness of a fee for the litigation services of an executor. We disagree with this claim as well.

The defendant is mistaken in his contention that the trial court's reliance on the decision of the Probate Court was improper because such decisions are inadmissible as hearsay. To the contrary, in *Gaynor* v. *Payne*, 261 Conn. 585, 598, 804 A.2d 170 (2002), our Supreme Court held that courts of general jurisdiction must give preclusive effect to Probate Court decrees adjudicating the validity of an executor's accounting for his performance of his duties to the estate. Accordingly, in this case, the court was required to take into account the Plainville Probate Court's adjudication of the fee to which the defendant was entitled for his services for Stanley Kosiorek as executor of the Kosiorek estate.[13]

---

[13] The defendant does not contest the validity of the court's assumption that the Plainville Probate Court already had assumed jurisdiction over the Kosiorek estate at the time of the estate's litigation with Stanislaw Kosiorek's widow.

## C

In addition to these specific claims of trial court error, and again in his reply brief, the defendant maintains that, without affirmative evidence of misconduct on his part, the court improperly ruled against him because of its disbelief in his explanation for his dealings with the Kosiorek estate. We are persuaded to the contrary by the evidence of record about the manner in which the defendant collected his fee and the speed with which he removed the funds that he claimed as his fee from the jurisdiction of the Probate Court and the Superior Court.[14]

## III

The defendant's third claim on appeal is that the court violated canon 3 of the Code of Judicial Conduct by relying, in this case, on facts of record that the court heard in presiding over hearings held pursuant to a civil case brought by the executor against the defendant.[15] For two reasons, we decline to address the merits of this claim. First, the defendant has failed to satisfy his burden of establishing, as a matter of record, the facts on which the court allegedly improperly relied. See *State* v. *Santangelo*, 205 Conn. 578, 584, 534 A.2d 1175 (1987). Second, claims of judicial impropriety are waived unless asserted at trial. *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 615–16, 236 A.2d 466 (1967).

In sum, we agree with the trial court that, as charged in the presentment, the defendant violated rules 1.5 and 1.15 (b) of the Rules of Professional Conduct. The contingency fee agreement between the defendant and

---

[14] In his reply brief, the defendant criticizes disciplinary counsel for repeatedly characterizing the defendant's conduct as having been motivated by greed and for having failed to show remorse for his behavior. We agree with this criticism. Such personal invectives have no place in appellate advocacy.

[15] See *Kosiorek* v. *Smigelski*, Superior Court, judicial district of New Britain, Docket No. CV-07-414607 S.

Stanley Kosiorek as executor of the Kosiorek estate did not authorize the defendant to appropriate to himself as his fee a sum that bore no relationship to the services he had rendered. That agreement, furthermore, did not authorize him to sidestep a proper accounting by immediately removing the funds that he had appropriated from his local bank account.

The judgment is affirmed.

In this opinion the other judges concurred.